Succession of Moore.

## No. 10,159.

### SUCCESSION OF JOHN T. MOORE.

Forced heirs have an action in reduction of excessive donations, which extends not only against co-heirs, but even against strangers. It includes a spouse.

The usufruct which the law allows to the surviving spouse, over the share of the deceased in the property of the community, during widowhood, when there exists issue of the marriage, is not defeated by testamentary dispositions of the deceased, bequeathing the disposable portion to the survivor and the usufruct over his undisposed share of the community property.

Such usufruct can be defeated only where the predeceased has, by will, disposed of his share in whole, or in part; adversely to the usufruct, so that both, the usufruct and the bequest, cannot co-exist.

Bonds payable to bearer, and title to which is transmissible without indorsement or assignment, but by simple delivery, may be the objects of a manual gift, and are not required to be donated by authentic act. This sort of donation is subject to no formality.

Property donated must be appraised at its value, at the death of its donor, and fictitiously added to the property owned by him, at his death, in order to ascertain the disposable portion.

Excessive donations are not null, but reducible.

Donations, in excess of the disposable portion, produce no effect, for the surplus.

When the property donated is less in value than the disposable portion and that portion has been bequeathed to the donee, the latter is entitled to the difference from the estate of the testator.

A husband may give to his first wife that which he can to a stranger, but not more. In case of an excessive donation to her, the donation may be reduced at the instance of the forced heirs, whose légitime has been encroached upon, but only to make it good.

APPEAL from the Civil District Court, Parish of Orleans.
Tissot, J.

*Robert G. Dugue* for Mrs. Julia Moore and the Minor Hickey, Plaintiffs and Appellees:

All donations, whether made in or out of the State, are to be considered in determining the reduction to which they are liable, and must be fictitiously added to the property belonging to the donor at his death. C. C. 1505.

Only those are excluded which have perished by accident in the hands of the donee. C. C. 1506.

In calculating the disposable portion, the property given or bequeathed to all persons whether relations or strangers, must be included. C. C. 1234,

A donation *omnium bonorum* is null for the whole. C. C. 1497.

One must have a domicile somewhere. Domicile once acquired continues until another is obtained, and the burden of proving the change is on him who asserts it.

Both the fact of abode and intention of remaining indefinitely are necessary to establish a new domicile. The fact of abandoning a place in search of another place, without that place being determined upon, and occupied or inhabited as a residence or domicile, does not operate an abandonment of the first domicile. 31 Barb. 479; 53 N. Y. 568.

The allegation of domicile in a bill in chancery, standing alone, is not decisive. Ibid.

There is no proof of the donations made in New York.

If they were made, they were simulated and fraudulent, and were invalid in form. 22 Ann. 97; 12 R. 76; C. C. 1536, 1538.

If valid, they were revoked tacitly. C. C. 1749; 26 Ann. 449, 195; 5 Toullier, §§ 912, 914. 923; 23 Demolombe, § 482; 15 Laurent, §§ 332, 333; Aubry & Rau, p. 115; 4 Troplong, Donations, § 2667.

All that is acquired during the existence of the community is presumed to belong to it, and everything found in the possession of the survivor is presumed to belong to the community until the contrary is shown. C. C. 2334, 2402, 2404, 2405; 16 Ann. 209; 37 Ann. 104.

In a testate succession composed solely of community property, a bequest of the disposable portion by the predeceased spouse deprives the survivor of the usufruct of the légitime of the forced heirs. Forstall vs. Forstall, 28 Ann. 198; Denégre vs. Denégre, Opn. Bk. 45, fol. 529; 33 Ann. 1; 32 Ann. 1218; 26 Ann. 198; 33 Ann. 55; 13 Ann. 424; 12 Ann. 646.

The légitime cannot be impaired. C. C. 1710; 3 L. 9; 32 Ann. 1218.

The legacy must be accepted or renounced for the whole. C. C. 986, 1016.

*Singleton, Brown & Choate* and *H. D. Ogden* for T. A. Flanagan, Tutor, Intervenor.

*T. J. Semmes & Legendre* and *W. B. Lancaster* for Widow A. J. Moore, Defendant and Appellant :

1. The motive which influences a party to change his domicile is immaterial if the intention is real. 138 Mass. 372; 5 Mason, 70; 117 U. S. 123.

2. The intention to remain in a place for an indefinite time suffices to acquire there a domicile. 8 Cranch, 279; 33 Ann. 137; Landis vs. Walker, 15 Ann. 213.

3. Although the party removing to that place may have a floating intention at some time to return. Story Conflicting Laws, Sec. 46; Whart. Confl. L., Sec. 22 (n); Lawrence's Com. on Wheat,, Vol. III, p. 98.

4. The decision in 28 Ann. 198, Forstall vs Forstall, is erroneous. The surviving spouse is entitled to the usufruct of any portion of the deceased's share of the community property not disposed of by will, and which the issue of the marriage may inherit. The share of the deceased in the community property is totally distinct from the disposable portion of the estate; the act of 1844 intended to burden any part of the community property inherited by the issue of the marriage with the usufruct of the surviving spouse, even though such commuity property constitute the légitime of the children in whole or in part.

5. Gifts from husband to wife, during marriage, are valid by the law of New York, and are upheld in equity without the intervention of a trustee wherever the common law

prevails. Equity has always disregarded the oneness of the spouses at common law, and like civil law treated married persons as two.  88 N. Y. 302; 96 N. Y. 540; 36 N. Y. 412; 48 N. Y. 216.

6.  In common law States, a delivery, with intent to transfer title to a chose in action, or note, or bond, or certificate of deposit, unindorsed, is a good gift; *a fortiori*, a gift of government bonds, payable to bearer is good on delivery with intent to give.  Hackney vs, Vroman, 62 Bar. 668; 1 Bailey (S. C.), 117; 13 Gray, 418; 55 N. Y. 62; 36 N. Y. 340; 107 U. S. 611.

7.  If a husband expresses intent to give, subsequent possession is presumption that gift was made.  62 Barb. 668; 1 Bailey (S. C.), 117.

8.  If a man take a note in name of his wife on sale of his property, it is presumptive evidence of a gift.  Richardson vs. Livery, 67 Mo. 411.

9.  Donations, valid by the law of the place where made, are not affected by subsequent change of domicile.  36 Conn. 160; 12 Ann. 607.

10.  If the domicile of Mr. Moore was in New York at the time of the donations made to his wife there, such donations are not subject to reduction under the law of Louisiana, although at the time of death he was domiciled in Louisiana.  Wharton's Confl. of L , Sec. 202.

11.  But the validity of a gift is to be determined by the law of the place where made, irrespective of the domicile of the parties.  Emery vs. Clough, 63 N. H. 552; Giday vs. Moore, 86 N. C. 484.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The object of this suit is to have it judicially declared :

1. That the widow of the deceased is not entitled to a usufruct over his share in the community property.

2. That the donations of securities and cash made by the deceased to his wife, in New York and New Orleans, are nullities, and if not such, are excessive, and should be reduced to the *legal quantum*.

3. That the deceased left individual property, which he owned previous to his marriage, and which must be accounted for.

The defense is, that the deceased, by his will, confirmed the usufruct given by law to his widow and has bequeathed to her the disposable portion of his estate ; that the donations attacked are valid as having been made in New York during the existence of the domicile of the couple in that State and agreeably to the local law.

There was judgment recognizing the succession as a creditor of the community for $7000, the widow as a creditor for $2000 ; that Moore never acquired a domicile in New York ; that the donations are simulated ; that the effects donated should be inventoried ; that the widow is entitled to the disposable portion and the plaintiffs to the share accruing to them as forced heirs, in that portion of his estate of which the law prohibits him from disposing.

From this judgment the widow prosecutes this appeal. The appellees have prayed for no amendment.

Three questions are therefore presented :

1. What are, in the eye of the law, the testamentary dispositions of the deceased and what is practically their extent.

2. Whether the donations made in New York are or not valid.

3. Whether the succession is a creditor or not of the community.

John T. Moore died in this city on March 29th, 1886.

He left a surviving wife, seven children and two sets of grand-children representing their deceased mothers.

He executed a will on October 20th, 1885, which was followed by a codicil dated February, 1886.

The will contains the following clause:

"All the property I am possessed of, consists of community property. I give, devise and bequeath unto my wife, Agnes Jane Byrne Moore, the usufruct during her natural life, of all the property I may die possessed of, community or no community. I hereby appoint my said wife executrix of this my last will and testament, with seizin of my entire estate, and without any bond or security whatever and without an inventory of my estate."

The codicil contains two special legacies, amounting to ten thousand dollars, and the following clause :

"I give and bequeath unto my said wife, Mrs. Agnes Jane Byrne Moore, the disposable portion of all the property, real and personal, movable and immovable, in whatsoever the same consist and wherever situated, I may own or possess at the time of my death, and to that end I constitute my said wife my universal heir and legatee.

"I do hereby declare that this is a codicil to the last will and testament, already referred to as having been made by me by act before W. J. Castell, late a notary public in this city, on 20th October, 1885, which said last will and testament shall be and remain in full force and effect."

I.

These clauses must be taken and construed together in order to ascertain what the intention of the testator was.

A careful consideration of them impresses the mind that his main object was to give to his wife all that the law allowed him to dispose in her favor.

The first expresses the wish that she should have the usufruct

during life of all his property, and he next bequeaths to her the disposable portion of that property, constituting her to that end his universal legatee.

The plaintiffs contend that, under the terms of the act of 1844, now Article 916 R. C. C., and under Article 1710 R. C. C., the widow cannot claim *both* the disposable portion and the usufruct.

Article 916 reads :

" In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed, by last will or testament, of his or her share in the community property, the survivor shall hold in usufruct during his or her natural life so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, whenever the survivor shall enter into a second marriage."

This is a reproduction of the second section of the act of 1844, p. 99 ; R. S. 1711.

Article 1710 justifies an action to revoke charges or conditions illegally imposed by a testator on the legitimate portion of forced heirs, and is a reproduction of Article 1703 of the Code of 1825.

The purpose of the law was obviously to enlarge the rights of the surviving spouse by conferring on him or her, privileges not previously possessed.

Under anterior laws, such spouse was entitled to take only his share of the community property, and had no claim whatever over the portion accruing to the issue of his marriage with the deceased, as his share therin.

Since the passage of the law, the surviving spouse has, *virtute legis,* a right of usufruct over the share of the deceased in the community property inherited by the issue of the marriage whenever the deceased has not, by a testamentary disposition, provided to the contrary.

The usufruct, under the provision of the law, continues during the widowhood of the survivor, when there exists issue of the marriage and no will to the reverse.

The law did not propose, by allowing the usufruct, to abridge any of the rights of the first dying spouse. On the contrary, it left it within his power, his discretion, even his caprice, to place his share in the community property in the condition in which it would have been in, had not the law of 1844 been passed, as, it provides that the usufruct will accrue to the survivor, *if* the deceased has not disposed, by will, of his share, inherited by the issue of his marriage.

The spirit and the letter of that portion of the law are simply, that

the surviving spouse shall have, during widowhood, the usufruct of the share of the deceased in the property of the community, there being issue of the marriage, when the deceased shall not, by will, have disposed of his entire share in the property, so as to defeat the legal usufruct over the whole; clearly implying, that, when the deceased shall have, in that mode, disposed of a part of his share, the usufruct created by law, should extend only over the portion inherited by the issue of the marriage, due regard had to their *légitime*.

At Moore's death, his widow was clearly entitled to her half of the community property, and, in the absence of any will to the contrary, she would also have been entitled to a usufruct during her widowhood, over the remaining half, that is the share of her husband therein inherited by the issue of the marriage. *In honorem preteriti matrimonii. A fortiori*, would she be entitled to such usufruct, when, there being a will, it provides that she shall have it.

Surely, as the law did not design to curtail any of his rights over his property, which he possessed previous to the law, Moore could have bequeathed the *naked* ownership of the disposable portion in favor of any stranger, for, under the previous laws, he could have disposed of that portion of his estate even unqualifiedly, such ownership to become eventually *full* ownership, at the termination of the usufruct.

His widow, in the case just stated, would have had a usufruct over the entire share, as well that portion bequeathed to the stranger, as that inherited by his issue, the legatee taking nothing beyond the naked ownership of one-third, and the issue that of two-thirds.

There would even be no objection to his bequeathing the disposable portion, without any restriction, including both ownership and usufruct, to a stranger, leaving the other two-thirds to accrue in naked ownership to his forced heirs as the maximum of their *légitime*, but subject to the usufruct of his widow.

What he could do in favor of a stranger, he could validly do in favor of his wife.

Who can do more, can do less.

It is apparent, that the only condition imposed by law for the existence of the usufruct in favor of the survivor, is that the deceased shall not have disposed by will, *adversely*, of his share in the community.

As a consequence, it follows that where the adverse disposition affects only *part* of the share, the usufruct shall not extend over the disposed portion, but shall exist over the undisposed portion, inherited by the issue of the marriage.

Disposing of *the share* means disposing of the *entire* share.

To dispose of *part* of the share is not, to dispose of the *entire share*, is not to dispose of *the share.*

It is true that Moore could not encumber the portion for which his children are forced heirs, that is their *légitime;* but the fact is that he has not done *so*, for the encumbrance is placed upon it by *law*, independent of his participation.

All Moore did was to confirm it. It would have existed without the confirmation, which is practically a superfluity.

The words used for the confirmation and which apparently are expressive of a bequest, are of little or no significance, for the plain reason, that, without such confirmation, the widow would have had the usufruct by the force of the law, and could have been deprived of it only by an adverse testamentary disposition of her husband.

The contention of the plaintiffs is that: "Where there is a will, which diverts from the issue the disposable part of the community property—which the issue would otherwise inherit—and so the issue does not inherit the whole, the usufruct does not attach."

This proposition is untenable and rests upon the inadmissible theory that disposing of a *part*, is disposing of the *whole* of the thing.

In support of this view, counsel relies on the decisions of a previous Court in two cases, that of the Succession of Forstall, 28 Ann. 198, and of the Succession of Denegre, unreported. O. B. 45, fol. 529; also Grayson vs Sanford, 12 Ann. 646.

The terms of the wills of Forstall and of Moore are not germane. The facts are different. The ruling, therefore, cannot be invoked as a precedent.

The opinion shows that Forstall had disposed of his entire share in the community in favor of his wife, while in the instant case, Moore has bequeathed to his wife only the disposable portion, confirming her legal usufruct over the remaining portion of his share in the community property, without affecting or attempting to encumber, in the least, the ownership of the two-thirds inherited by the issue.

The court used the following language:

"The condition upon which the survivor shall have the usufruct is that the predeceased husband or wife shall not have disposed of his or her share; that is, the share that he or she was permitted by law to dispose of."

A thoughtful reading of the text of the law and consideration of its spirit and purpose, shows that the disposition which is referred to as destructive of the usufruct, is not one *in favor of*, but one *adverse* to,

the survivor, one which actually takes away from him, in unmistakable terms, the usufruct, in whole or in part.

Hence, where the deceased spouse, leaving issue of the marriage, and owning separate and common property, bequeaths to the survivor the disposable portion and the usufruct of his undisposed share in the community property, the disposition is valid and binding on the heirs inheriting the undisposed portion, and the same is true where he institutes the survivor his universal legatee, for, the bequest is not null, but reducible to the disposable portion and the usufruct over the undisposed share. R. C. C. 1502.

In the succession of Denegre, subsequently decided, it was held by a divided court that, as the testator had bequeathed $10,000 to one of his daughters and directed that the rest of his property be *administered* for the benefit of his widow and children, he had disposed of his share in the community and that his widow was not entitled to the usufruct.

The error consists, not so much in the construction of the law, as in the interpretation placed on the will, for it is clear that, if after making the legacy, the testator had provided that his estate should, at his death, pass to his heirs, the decision would have been correct.

Such was the condition of things presented in the Succession of Schiller, 33 Ann. 1, in which the testator had willed that his estate be *distributed* among his legal heirs, according to the laws in force in the State. The word distribution implying a division, and, therefore, a partition, the present Court held that the widow is not entitled to the usufruct which she claimed.

The facts in the Grayson case, 12 Ann. 646, are not analogous to those here. The widow did not claim *both* the disposable portion and the usufruct, and the Court did not say that she could not have *both*. The matter under consideration was the interpretation of the will. The same may be said of the ruling in the Grayson case. 12 Ann. 646.

It is a fallacy to suppose that where a person dies owning separate property besides his share in the community, the disposable portion consists only of part of that share. His succession is necessarily made up of his separate estate and of his share in the community—the disposable portion, varying according to the number of the children left—from two-thirds to half and to one-third of the entire estate.

Hence, in the present case, as the property left by Moore consists of not only his separate estate, but also his half of the assets of the community, the disposable portion is of one-third of both, as he left more than three children.

From all the foregoing, it is perfectly clear that, as Moore has not in any manner disposed, by testamentary disposition, *adversely* to the usufruct created by law in favor of his surviving wife, but has, on the contrary, confirmed that usufruct, it follows that his will must be maintained and his widow recognized as entitled to the disposable portion and to the usufruct over the rest of his property, to the extent to be hereafter set forth.

## II.

The next question to be considered relates to the donation of securities and cash made by Moore to his wife, in New York and New Orleans.

We deem it unnecessary to review the testimony which was offered to show that Moore has never lost his domicile in New Orleans and has never acquired any in New York.

We are satisfied that the circumstances under which he left New Orleans, and which, it is needless to state, were such as to inspire him with the desire of leaving the city to seek tranquillity elsewhere; that he left with the intention of establishing another domicile in some other place, but we are not convinced that he did so in New York, as is claimed. The intention and the fact must co-exist. There is nothing substantial to show that that intention was ever realized beyond a doubt.

It does not, however, follow that the donations made by Moore to his wife, while they were in New York, and subsequently here, are nullities. They must be viewed as made in New Orleans. They, no doubt, were made and accepted *bona fide*. The donation made in New York consists in United States bonds to the amount of one hundred thousand dollars, and that in New Orleans, of money, seven thousand nine hundred and thirty-five dollars and fifty-seven cents, aggregating $107,935.55.

The defendant denies that the donations are excessive, and even if such, that they can be reduced.

Surely, the widow, not being an heir, cannot be required to collate, if the donations exceed the disposable portion, but it is beyond all; dispute that the plaintiffs, who are forced heirs, have, by the law, the right to bring an *action in reduction*. It is manifest that, unless they enjoyed that privilege, the exercise of which is optional with them, the articles of the Code, which prohibit excessive donation, when there exist forced heirs, would be dead letters; nay, read out of the book altogether. R. O. C. 1493, *et seq.*

Article 1504 admits the right, saying that it can be exercised by

forced heirs only, but not by donees, legatees or creditors. R. C, C. 1502, 1703; also, H. D. Vol. Donations II. (d) 1, 5, 11, 15, 16, 18; C. N. 921, 922; Chabot, Vol. Adoption, Locré, p. 386, No. 28.

The authors are unanimous on the question, and recognize the extension of the right not only against concurrent heirs, but even against *strangers*. The wife may be benefitted as much as a stranger, but not more. She forms no exception. R. C. C. 1746; 1 Ann. 237; 7 Ann. 175; C. N. 920 *et seq;* V. Demolombe, Vol. 19, No. 189; Pothier Don. Sec. 3, Art. 5; Louré 11, p. 451; Duranton 8, N. 316; Merlin, Vol. Inst. D'her, Sec. 1, No. 9; Aubry & Rau., Vol. 7, p. 184, § 683; Laurent, Vol. 12, No. 152. See, also, Baudry Lacantinerie, Vol. 2, pp. 165-6.

It is because of that right of action, that the law provides that in determining the question of reduction, the property disposed of *inter vivos*, must be fictitiously added to that belonging to the donor at the time of his death and appraised at its value then. R. C. C. 1505, 1235.

It also emphatically provides, in calculating the disposable portion, that all the property donated or bequeathed by the deceased must be included, whether given to the children, to relations, or to *strangers*. R. C. C. 1234.

It, therefore, follows that the plaintiffs in this suit have a standing to demand a *reduction* of the donations, if the effects donated were, at the death of the donor, worth more than the disposable portion.

The amount of the property inventoried nears $245,000; that of the bonds and cash foots some $108,000.

It is claimed that, to the inventory should be added the separate property of the deceased, valued in the judgment at $7000.

This would swell the inventory beyond $350,000, donations included.

There is no proof in the record, that we have been able to discover, establishing the value of the bonds at the death of Moore, and there is no specific argument or prayer on the subject that can justify a decision presently of the question whether the donations exceed or not the disposable portion, so that this matter must be left open for future consideration and determination in other proceedings.

The donations, if excessive, would not, on that account, be null, but simply reducible. R. C. C. 1502.

In relation to the amount which Mrs. Moore claims to have loaned her husband, i. e., $20,000, and which was the proceeds of coupons on the bonds, and was subsequently returned by him to her, it is enough to say that, if the bonds became her property by the donation or gift

made of them to her, she necessarily was likewise the owner of the fruits yielded by them, and is not accountable therefor.

It has been contended that the donations are null, because not made in the proper form ; that is, by a notarial act, under Article, R. C. C., 1538.

The bonds payable to bearer were *corporeal moveable* effects, which could pass, without indorsement or assignment, by simple delivery, and may be considered as proper objects of a manual gift, which is not subject to any formality. R. C. C. 1539 ; V. Laurent, Vol. 12, pp. 351-2, Nos. 280 and 281.

### III.

The third subject to be considered is the claim of the succession against the community, for the separate property of Moore, owned by him anterior to his marriage, and which was used for the benefit and advantage of the community.

The claim is stated to amount to $20,000.

The district judge, however, did not recognize it to be so large. He admitted the claim for $7000 only.

The plaintiffs have not prayed, by answer to the appeal, any increase of that allowance.

The appellant has not shown in what particular it is erroneous, and the evidence does not satisfy us that the finding of the lower court, in that respect, ought to be disturbed.

---

The judgment appealed from has recognized Mrs. Moore as a creditor of the community for $2000.

The appellees have not complained of this allowance, and cannot expect any amendment on the subject.

---

The condition of the transcript and the absence of any pointed demand for any specific relief, as far as figures go in all cases, particularly as concerns the reduction of the donations eventually, do not permit us, as already intimated, to arrive at any particular result in that regard.

---

We will conclude in stating the manner and mode in which, keeping in view the matters involved in the present controversy, the Succession of John T. Moore ought to be and must be settled.

The mass of the succession must be composed of the separate property of the deceased, of his share in the common property, and of the value of the effects donated at the time of his death.

After payment of the debts and charges against his estate, including the legacies and the $2000 found in favor of Mrs. Moore, the net revenue must be divided into three equal parts.

The first third should be composed of the separate property of Mr. Moore, and in addition of such portion of his share in the community as may be necessary to complete that third.

Out of that third must be deducted the two legacies of $10,000, and the residue of the third will accrue to Mrs. Moore in full satisfaction of the legacy of the disposable portion made to her by her husband, including the value of the effects and money donated to her by him in New York and in New Orleans, should there remain a *deficit* between the amount of the legacies added to the donations and the third of the entire estate, the *deficit* will have to be satisfied out of the share of the deceased in the community; but should, on the contrary, the amount of the legacies added to that of the donations, encroach beyond the third, on the remaining two-thirds, this surplus shall be forfeited by the widow, and she would take only the difference between the legacies and the amount of the third    R. C. C. 1510.

Next, Mrs. Moore will be entitled to the usufruct of the remaining share of the deceased in the community during her widowhood, under the law, as confirmed by the will.

Finally, the portion of the estate of the deceased as shall be subjected to the usufruct of Mrs. Moore shall be deemed as the *légitime*, accruing in naked ownership to the nine children, as forced heirs of the deceased, share alike, the plaintiffs herein, viz: the minors, Flanagan and Mrs. Moore, Jr., jointly, to be entitled to two-ninths, and the minor, Hickey, to one-twenty-seventh of that portion.

For these reasons :

It is ordered and decreed that so much of the judgment appealed from as recognizes Mrs. Moore as a legatee for the disposable portion, and as a creditor for two thousand dollars and the succession as a creditor for seven thousand dollars, be affirmed, and that in all other respects it be reversed ;

It is further ordered and decreed that the donations made in New York and New Orleans be recognized as valid, the same to be allowed to Mrs. Moore in part satisfaction of her legacy of the disposable portion, and in case the same exceed that portion, that the surplus be declared forfeited by Mrs. Moore, to be made good by her to the succession, it being understood that the legacies of ten thousand dollars are to be first deducted from the disposable portion ;

It is further ordered and decreed that Mrs. Moore be declared

entitled, during her widowhood, to the usufruct of the share her husband inherited by the issue of their marriage, as shall remain after satisfaction of the disposable portion; and,

It is further ordered and decreed that the plaintiffs and the other children and grandchildren be recognized together as entitled, in their capacity of forced heirs to the deceased, to the naked ownership of the two-thirds or portion of his share in the community as is subjected to the usufruct of Mrs. Moore, or the minors, Sullivan and Mrs. Moore, Jr., to one-ninth each of said same share, and the minor, Hickey, to one-twenty-seventh thereof.

It is further ordered and decreed that the appellees pay costs of appeal.

Mr. Justice Watkins dissents on the question of usufruct and concurs in other respects.

## ON APPLICATION FOR A REHEARING.

The salient complaint is levelled against the allowance of the disposable portion and usufruct, claimed by the widow.

The brief in support is a mere repetition of what had been previously said and written on the subject, on behalf of the plaintiffs and an ingenious criticism of the opinion in the case attacking it on matters of secondary importance, without, in the least, impairing its solidity and correctness on the main issue.

## I.

The petitioners rely explicitly on a decision which we had not thought proper to notice specially, and which, they contend, has an immediate favorable bearing; that is the case of Grayson vs. Sanford, 12 Ann. 646.

In that suit, it appears that the testator had bequeathed to his widow the usufruct of his property, and in case of a suit for a partition by any of his children, all the property he could dispose of by law forever.

There was brought such suit and the widow claimed the usufruct, but not the disposable portion.

The court said that the principal question was, whether she was entitled to the usufruct or to the disposable portion, and that the solution of the issue depended on the *interpretation* of the will.

The question did not arise, whether the widow was entitled to *both* the usufruct *and* the disposable portion, for the plain reason that it

was not the intention of the testator that she should have *both*, but either the one or the other.

He willed her the usufruct and eventually the disposable portion.

It is true that the court gave her the disposable portion—i. e., one-third—there being more than three children ; but it does not appear that she ever claimed that portion included the usufruct over the share of the deceased in the community, and hence the court did not pass upon it. It could not have rendered judgment *ultra petitum*, or for more than was at issue.

There is to.be found no precedent in the reports in which both the usufruct and the disposable portion as known previous to the passage of the act of 1844 were claimed by the surviving spouse.

The rulings in 9 Ann. 398 and in 13 Ann. 424 have no bearing upon the present controversy. The first relates to matter within the first provision of the act, and the second has already been met in the opinion.

The construction placed by the petitioners on the purport and tenor of the act of 1844 or Article R. C. C. 916, is the result of a confusion of ideas on the subject. They seem to consider that certain articles of the Code of 1825 form part of the organic law and are not susceptible of repeal, or amendment by the law-making power; but such is not the case. The Legislature can amend laws.

The act of 1844 has surely modified those articles, so that the rights which the surviving spouse had, when there existed a community with the deceased, prior to that legislation, are broader eventually to-day, and that the same extend over the share of the deceased in the community in the shape of a usufruct, for a time, varying according to certain circumstances stated, subject to the right of the predeceased spouse of disposing by will, so as to defeat that usufruct.

We have not held that the share constituting the *legitime* reserved to forced heirs has been decreased, or may be encumbered *by a testator*.

The share accruing to such heirs is the same to-day as it ever was, with this difference, that it is encumbered, not by the testator, but by the law, with a usufruct in favor of the surviving spouse in community when the predeceased has not by his will determined otherwise.

We hold that a spouse in community can legally bequeath to the survivor the disposable portion of his or her estate, as it always was known, and may confirm in his or her favor, the usufruct provided by law, either by remaining silent or by expressing himself clearly on the subject, the language used, whether a bequest or a ratification, being immaterial.

## II.

After a review of what we said on the question of the $20,000, included in the $27,630.55, and claimed by Mrs. Moore for as much reimbursed to her by her husband, in satisfaction of coupons lent him by her, we think it preferable that the whole matter be left open for future consideration, in the proceeding which the heirs may bring against Mrs. Moore for an account.

Our opinion will, therefore, be accordingly considered as silent on the subject. The same may be said of that portion of the decree which alludes to the *New Orleans* donation.

This disposition embraces the surplus of the $20,000, namely the $7635.55, which will have also to be accounted for.

## III.

We have not considered the $10,720.58 to which the petition for a rehearing refers, as having been deposited in bank to the credit of Mrs. Moore, after October 20, 1885, and which are said to belong to Moore or his succession. We did not deem them at issue by the pleadings. The door remains open for any claim which the plaintiffs may have on this or any other subject not expressly passed upon, when they will call on Mrs. Moore for an account of anything which is not hers.

## IV.

Neither did we allude, for a like reason, to the city consolidated bonds alleged to have been taken from the bank box, between Moore's death and the day of inventory by Mrs. Moore, in satisfaction of her claim of $2000, which the plaintiffs admit to be due her. The liability of Mrs. Moore for these bonds remains also a matter for future consideration.

## V.

Neither did we concern ourselves with the alleged donation made to Mrs. Gibbons, a daughter of Moore, as there was no issue on the subject. Necessarily, if the donation was made and is subject to collation, it will have to be deducted from the disposable portion, when ascertained.

## VI.

It was a matter of indifference, for the purposes of the opinion, to consider the value of the United States bonds at Moore's death.

All effects donated, to whomsoever, or illegally withheld, will have to be fictitiously or actually added to the property left by Moore and

35

in actual existence, as his. at the time of his death, and will have to be appraised at their value then, in order to ascertain the disposable portion.

## VII.

*Finally.* We see no reason to change the conclusion previously reached, that the bonds, which are payable to bearer, and the title to which is transmissible without any indorsement or assignment by mere delivery, are not subject to any formality, save that of tradition and acceptance.

To make the alterations mentioned, it is unnecessary to grant a rehearing.

It is, therefore, ordered and decreed that the original judgment herein be amended so as to eliminate from it such portion as refers to any donation made *in New Orleans*, and that, in other respects, it remains undisturbed.

Rehearing refused.

Mr. Justice Fenner files a concurring opinion.

Mr. Justice Watkins adheres to his original opinion on the question of usufruct and concurs in other respects.

---

WATKINS, J. I make the following extract from the brief of Mrs. Moore's counsel, viz:

"John T. Moore died on 29th March, 1886, in this city, leaving nine children, or their descendants, and a surviving spouse, the mother of said children; *all his property belonged to the community which had subsisted between him and his surviving widow*, Agnes Jane Byrne, to whom he was married in 1845.

"The plaintiffs in these suits are the minors Flanagan, represented by their natural tutor, who had married one of the daughters of the deceased, and the minor Hickey, represented by his natural tutor, who had married another daughter, and Julia, another daughter of the deceased, who married John T. Moore, Jr.

"All the unmarried children of the deceased, and also Mrs. Gibbons, a married daughter, living in St. Louis, adhere to their mother in this controversy.

"John T. Moore died testate, having executed a will dated 20th October, 1885, and a codicil dated 27th February, 1886.

"The will is in these words: 'All the property I am possessed of consists of community property. I give, devise and bequeath unto my wife, Agnes Jane Byrne Moore, the usufruct during her natural life of all the property I may die possessed of, community or not community.

I hereby appoint my said wife executrix of this my last will and testament, with seizin of my entire estate, and without any bond or security whatever, and without an inventory of my estate.'

" The codicil, after giving a special legacy of $5000 unto Mrs. Burke, a sister of the deceased, and a special legacy of $5000 to the Society of St. Vincent de Paul, proceeds as follows:

" ' I give and bequeath unto my said wife, Mrs. Agnes Jane Byrne Moore, *the disposable portion of all the* property, real and personal, movable and immovable, in whatsoever the same may consist, and wheresoever situated, I may own or possess at the time of my death, and to that end I constitute my said wife my universal heir and legatee.

" ' *I do hereby declare that this is a codicil to the last will and testament, already referred to, as having been made by me* by act before W. J. Castell, late a notary public in this city, on 20th October, 1885, *which said last will and testament shall be and remain in full force and effect.*'

"The plaintiffs in these cases demand the *immediate possession and enjoyment of their share of the succession of the deceased, free from the usufruct of the surviving widow.*"

The act of 1844 in relation to the survivor's legal usufruct of his share in the community, was, in its revision in 1870, incorporated into the Civil Code as Articles 916 and 917, and the former is couched in these words, viz:

" In all cases, when the predeceased husband, or wife, shall have left issue of the marriage with the survivor, and shall not have disposed, by last will and testament, of his or her share in the community property, the survivor shall hold in usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue," etc.

The question for decision is: Whether or not the deceased disposed, by last will, in favor of his wife, " of his * * share in the community property."

What was the " share in the community property," of which he could have disposed by last will in favor of his surviving widow—his *entire estate* consisting of his *half* of the community property.

His will bequeathed, in her favor, " the *disposable portion* of his property." Now, inasmuch as *his half* of the community property was *his estate*, he, necessarily, bequeathed one-third of his half of the community property, and he could not have validly bequeathed her more. *Ergo*, the deceased did dispose, by last will, " of his *share* in

the community property"—i. e., the share in it of which he *could* legally dispose by last will.

What is the necessary result?

In my opinion it is, that the surviving widow cannot "hold in usufruct so much of the share of the deceased in such community property as may be inherited by such issue."

It must be carefully observed that the phrase, "share in the community property," is repeated in the cited article, and *as* repeated, one serves to interpret the other

Paraphrase, and state the sentence affirmatively, thus:

In case the predeceased husband shall have left issue of his marriage with the survivor, and shall have disposed, by last will, of "his share in the community property, the survivor shall (*not*) hold in usufruct　*　*　*so much* of the share of the deceased in *such* community property as may be inherited by *such issue.*"

Now, I respectfully submit, that, if the true intent of the Legislature was, and the true meaning of the law is, that, in order to have the effect of destroying the legal usufruct of the survivor, the last will of the deceased should have disposed of his *half* of the community property, the second clause of said article would be rendered nugatory and meaningless, for the obvious reason that there would remain nothing "to be inherited by such issue."

The law contemplated that the bequest should leave something that might "be inherited by such issue." The law would have been inconsistent with itself, if it were otherwise, because "the issue of the marriage" are forced heirs.

To my thinking, the conclusion is irresistible, that when, as in this case, the deceased husband, leaving more than three children as "the issue of his marriage with the survivor," has bequeathed to her the disposable portion of his estate—it being one-half of the community property—the remaining two-thirds of such half is liberated from the widow's legal usufruct, and passes to "such issue" in full ownership.

This two-thirds is "*so much* of the share in such community property" as would remain after the widow's one-third is subtracted therefrom; and is "so much of the share in such community as may be inherited by such issue."

I understand that the question here was squarely presented, and as squarely decided by the Court, in *Forstall* vs. *Forstall,* 28 Ann. 197, to which reference is made in the opinion of the Court.

The Court say: "This is a controversy between the surviving widow and universal legatee of Edmond J. Forstall and the children,.

the forced heirs, in regard to the share of the deceased in the community property; the widow contending that she is entitled to *one-third*, the disposable *quantum*, *and* to a usufruct of the two-thirds reserved by law to the numerous heirs of the deceased; and the heirs contending that they are entitled, in *full ownership, to the two-thirds reserved to them by law.*"

\*          \*          \*          \*          \*          \*          \*          \*          \*          \*

" Edmond J. Forstall disposed in favor of the surviving widow by last will and testament, bequeathing to her his share of the community property.    As there are more than three legitimate children, the legacy must be reduced to one-third, and the heirs are entitled, in full ownership, to two-thirds of the property of their father.

"The surviving widow is not entitled to the usufruct of this two-thirds, because the deceased disposed, by last will and testament, of his share of the community property.

\*          \*          \*          \*          \*          \*          \*          \*          \*          \*

" Where there has been no testamentary disposition of the disposable share of the predeceased husband or wife in the community property, the survivor shall be entitled to a usufruct during his or her natural life of so much of the share of the deceased in such community property as may be inherited by such issue.    The condition upon which the survivor shall have a usufruct is, that the predeceased husband or wife shall not have disposed of his or her share—that is the share that he or she was permitted by law to dispose of."

That case was argued and decided on the theory that the legacy of the widow was not only reducible, but reduced to the disposable *quantum*.    That was all she claimed under the will.    As thus presented the instant case is precisely the same.

The argument is made in support of the defendant's contention that the *entire share* of the deceased is meant that the deceased could have bequeathed to his children his *half* of the community property, and that *such* bequest could dissolve the survivor's usufruct and no other.

But I deny that the deceased could have made such a will.    An excessive donation *mortio causa* is valid only for the disposable *quantum*, because the *law* vests the remainder in the forced heirs.

In the succession of Schiller, 33 Ann. 1, this court considered and interpreted a will couched in these words, viz:

"It is my will and desire that my debts be paid, and that my estate be *distributed* among my legal heirs, according to the laws now in force in Louisiana."

The Court says :   " The question presented simply is:

"Whether, by the phrase used, Schiller has or not *disposed of his share in the community*.   If he has, his three children have inherited his half therein *free* from their mother's usufruct.   If he has not, they have inherited it *subject* to that usufruct during widowhood.

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*

" It is manifest that he has *disposed of his estate*, that is, of all the property belonging to him at his death, in favor of certain persons, and in certain proportions.   *That property consisted of his half interest in the community between him and his wife*," etc.

The court held this language to mean  that the  deceased's one-half of the community property " should accrue unburdened, and be delivered at once, to his three children."   But they  did  not  say that such one-half passed to them by the will.   On the contrary, they do say :

" The children inherit the naked ownership of two-thirds of the one-half of their father in the community property by the *effect of the law ;* they inherit the remaining one-third, and the enjoyment of the entire half, to the exclusion of their mother's usufruct, by the *effect of the will* of their father, who, by *abstaining* from making *any will*, could have permitted his wife to enjoy such half as usufructuary during her widowhood."

In this opinion the following propositions are  distinctly  announced, viz :

1.   That the will of the deceased disposed of his  share in  the community  property.

2.   That his estate was his share in the community property.

3.   That the three children inherited two-thirds thereof by the *effect of the law.*

4.   That they inherited the remaining one-third by the  *effect of the will.*

5.   That the children were entitled to the enjoyment of the *half* to the exclusion of their mother's usufruct.

These conclusions, in my opinion, are  correct, and  confirm those I have herein expressed.

They are in exact accord with those entertained by our predecessors, as found reported in *Grayson vs. Sanford*, 12 Ann. 647, in which the Court said :

  " The principal point at issue in this cause is, whether the surviving widow is entitled to the *usufruct of the half* of the community belonging to the estate of her deceased husband, or whether she shall take the *portion* thereof which her husband *could dispose* by law."

The intimation is clear that she could not be allowed both.

Thereupon the court decided that " the rights of the widow are fixed by the will to the disposable portion," and declared her entitled to one-half of the community property, in her own right, and to *one-third of her deceased husband's* share in said community ; and the legal heirs —of whom there were seven—to the remaining two-thirds of same, in full ownership and to a decree of partition.

That opinion describes with precision and accuracy the claims of the forced heirs of Mr. Moore, and clearly defines their legal rights. It is my opinion that the legal usufruct of his widow, their mother, was broken by her acceptance of the benefits of his will, and that his forced heirs are entitled to be put in to *immediate* possession of their inheritance.

For these reasons I cannot concur in this *part* of the opinion and decision of the majority.

### Separate Opinion.

Fenner, J.   Under the light thrown on it by the able brief for rehearing, I have given additional consideration to the interesting question touching the usufruct.   To my mind it is perfectly clear that articles 915 and 916 of the Civil Code announce the policy of the law concerning the disposition of community property at the death of one of the spouses.   That policy is, that the survivor shall have the usufruct of the share of the deceased therein in two cases, viz: 1. Where the deceased has left no ascendant or descendant.   2. Where he has left descendants, issue of the marriage with the survivor, in which case the usufruct extends only to the portion inherited by such issue.

But these, like most other provisions for legal inheritance, are subjected to the power of testamentary disposition by the decedent. They are based upon the assumption that the legal dispositions conform to the natural desires and wishes of the deceased in absence of any expression of a contrary will.   But when he has exercised the testamentary power, and has not left his property to be disposed of by the law, but has himself directed how it shall go, so that those who take it, take under the will and not under the law, then the will must be executed and so much of the community property as passes under the will passes free from the usufruct.   Hence the law says that the usufruct shall accrue only when the deceased " shall not have disposed by last will or testament of his or her share in the community property." Why ?   Because when he has thus disposed of his share, he has left nothing for the law to operate upon, but has subjected the whole to

the domination of his own will. Even if the testamentary donation be excessive and be reducible to the disposable portion, such reduction enures only to the benefit of the forced heirs, and not of the surviving spouse who stands deprived of the usufruct because it was the plainly expressed will of the testator that she should be deprived of it.

But when the deceased has disposed of only part of his share, even though that part be the whole disposable portion, he leaves the balance to be disposed of by the law, free from any expression of his own will in reference thereto, and the issue of the marriage, inheriting solely under and by virtue of the law, must take subject to the burden which the law has imposed upon it, and which the testator has not interfered with, viz: the usufruct.

In this case the testator has added a clear expression of his own wish that his wife should enjoy the usufruct accorded by the law of "so much of the share of the deceased in such community property as may be inherited by such issue."

It is said, however, that this trenches upon the *légitime* of the forced heirs, by adding to the whole disposable portion the usufruct of the rest. Suppose it does. It is the law which so operates, and the *légitime* is a mere creature of law which it may alter at pleasure.

I am unable to understand why the policy of the law which attaches the usufruct to the whole when there is no will, should not equally apply to the residue when there is only a partial will, and still less am I able to discover any judicial authority to add to the plain legislative expression, " his or her share in the community," the words " or any part thereof," as claimed by counsel for appellees.

It would require a strong current of authority to overcome my clear convictions on this subject.

I find but a single decision directly in point and that is Dénegré's case, which is unreasoned and unreported.

Lee's case, 9th Ann. 398, arose under Article 915, and as the decedent left an ascendant, the article did not apply.

Clarkson's case 13th Ann. 524, did not concern these articles of the Code at all.

Schiller's case, 33 Ann. 1, harmonizes fully with the views above expressed because we held that the whole estate was disposed of by the will.

Grayson vs. Sanford, 12 Ann. 646, though containing *dicta* hostile to our views, may be reconciled on the ground that it was doubtful whether the will did not intend to deprive the widow of the usufruct in case the contingency arose in which she took the legacy of the disposable portion.

I therefore adhere to our original opinion on this point.