(100 South. 677)

No. 24608.

## Succession of PUJOL.

(May 5, 1924.)

*(Syllabus by Editorial Staff.)*

1. Wills ⬿478—Devise by implication held not permissible where testator did not dispose of his entire property.

Where, by will, testator gave his wife usufruct for life of all his property, subject to other bequests of his share of the community, but did not dispose of all of his property, it was not permissible to imply devise to testator's brothers to exclusion of widow's right as heir, in view of Rev. Civ. Code art. 915, as amended by Act No. 57 of 1910 and by Act No. 80 of 1916.

2. Wills ⬿865(4)—Share of community property not disposed of by will held to descend to testator's surviving widow.

Where testator does not dispose of his entire share of the community property by will, under express terms of Civ. Code, art. 915, undisposed of share descends in absolute ownership to surviving widow.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Proceeding by Jules Pujol and another in succession of Alexander Pujol, deceased, to annul judgment sending widow into posses-

sion as heir. From a rejection of their claim, petitioners appeal. Affirmed.

F. F. Teissier, Conrad Meyer, Jr., and Henry W. Robinson, all of New Orleans, for appellants.

F. J. Dreyfous and George A. Dreyfous, both of New Orleans, for appellee Mrs. Alex. Pujol.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. Alexander Pujol died in this city on September 11, 1920, without either descendants or ascendants. He left surviving him a widow, two brothers, and one sister. The property of his estate, separate and community, was appraised at a sum in excess of $35,000.

On November 6, 1919, the said Pujol executed a last will and testament, nuncupative in form by public act. As the proper construction to be placed on the will forms the subject of this litigation, we will here quote the pertinent provisions of the will:

"I give and bequeath to my wife Mary Magdalena Kraemer the usufruct and enjoyment during the whole term of her natural life of all the property of every kind and description and wherever situated which I shall or may leave on the day of my death."

"Subject to this usufruct, I give and bequeath:—

"To Mrs. Mary D. Monier, as a reward and recompense for her attentions shown me and services rendered to both my wife and myself, my community half in the property No. 916 N. Dorgenois street, together with the contents of my residence such as household effects and linens. In the event she should die before me, this legacy shall go to her son, Alex. H. Monier."

"To Alexander H. Monier, my community half in the property Nos. 2623 and 2625 St. Ann street, between Dorgenois and Broad streets. In case of his pre-decease this legacy shall go to his parents or to the survivor of them."

On application of Mrs. Pujol, the will was ordered registered and executed, and she was confirmed as testamentary executrix.

156 LA.—15

Thereafter on petition of Mrs. Pujol she was by decree of court sent into possession as widow in community of the community half of the property inherited from her husband subject to the two legacies, and as testamentary usufructuary of all of the property belonging to the estate of her said husband.

The present proceeding is a demand on the part of Jules and Louis Pujol, the two brothers of the deceased, to have the judgment sending Mrs. Pujol into possession annulled in so far as it recognizes her as the heir of her husband for his community half interest in the property, and to have the petitioners recognized as legal heirs of their brother in the proportion of one-third each of all of the property of which he died possessed, less the special legacies and subject to the usufruct, as provided in the will.

The basis for the demand of the brothers is that Pujol died intestate as to the whole and not intestate as to any portion of his estate; that, having disposed of parts of the community property and having given the usufruct of all of his property to his widow, she was not entitled to be recognized as the heir of her husband to any part of his share of the community.

The claim of the petitioners was rejected on an exception of no cause of action, and they have appealed. The sister of the deceased was not a party to the suit, and, so far as the record shows, joined with neither side in this litigation.

Article 915 of the Revised Civil Code of 1870, as amended by Act 57 of 1910 and by Act 80 of 1916, reads as follows:

"In all cases, when either husband or wife shall die, leaving no ascendants or descendants, and without having disposed by last will and testament, of his or her share of the community property, such undisposed of share shall be inherited by the survivor in full ownership."

Prior to the amendatory legislation as above quoted, the community share of a de-

ceased spouse, in the absence of ascendants or descendants and in the absence of any disposition mortis causa, was inherited by the collateral relations subject to a legal usufruct in favor of the surviving spouse. The admitted purpose of the Acts of 1910 and 1916 was to change the order of descent with respect to the community half of the property of the deceased spouse, and to constitute the survivor of the marital community the legal heir to the undisposed of interest of the deceased in preference to all collateral heirs.

What then would have been the legal status had Pujol made no disposition mortis causa of his property, separate or community? There can be but one answer. Mrs. Pujol would have inherited in absolute ownership his half of the community, and the brothers and sister would have inherited the separate property in its entirety and unincumbered with a usufruct. The will changed this order of legal descent to a modified extent. The widow was given the usufruct of all of the property, both separate and community, but the naked ownership of a part of the community was bequeathed to certain named individuals, subject, however, to the widow's testamentary usufruct. The separate property was left, as the law provided, to the collateral relations, but subject to the imposed usufruct.

The plaintiffs do not question the legal capacity of the testator to dispose of less than the whole of his property, separate and community, and to vest in his widow the usufruct of his entire estate. Their position is that the will, being vague and uncertain, is subject to interpretation, and should be so construed as to disinherit the wife and to give all of the estate of the testator, except the particular legacies, to his collateral heirs, reserving to the widow only the usufruct. In other words, it is contended that, having made a testamentary disposition, the testator must be presumed to have in-

tended to dispose of all of his property; that the court should accept this presumption and write into the will a disposition in favor of the brothers and sister of all of the undisposed of share of the community property under the doctrine of implied testamentary disposition.

There might be some force in the contention if the disposing provisions of the will were so uncertain and ambiguous as to leave the intention of the testator in doubt and were such as to require that such an interpretation should be made to give the entire will effect. But such is clearly not the case. The intention of the testator is expressed in such plain and unambiguous language as to obviate any necessity for interpretation. There is no reason for supplying any words, or for writing into the will any other disposition of the testator's property than such as patently and obviously appears from the will itself.

"It is the duty of a court to seek the intention of a testator, and, if it can be ascertained, to give it effect, if that be legally possible; but a court cannot make a will for a person deceased, nor substitute for the method selected by such person one of its own for carrying into effect the purpose of the will which he has made and left for execution." Succession of Canton, 144 La. 114, 80 South. 220.

The rule as to devise by implication, stated in 40 Cyc., p. 1390, is that, in order to prevent the will from failing of effect and in order to carry out the intention of a testator, a devise or bequest may be implied.

"The presumption, however, is very strong against the testator having intended any devise or bequest not set forth in his will; and in order that the devise or bequest may be effectual the implication must be a necessary one; that is, the probability of an intention to make the devise or bequest must appear from the will to be so strong that a contrary intention cannot reasonably be supposed to have existed in the testator's mind.

"Such an implication cannot rest on mere conjecture, although it is not required that the implication be absolutely irresistible."

[1] In the instant case there is no room for probability, let alone a strong probability, that the testator intended to make any change in the legal order of descent, otherwise than as distinctly and plainly stated in the will.

It would violate all well-established rules of construction and judicial precedent for the court to change the will of Pujol and to interpolate into said will a bequest to his brothers and sister of his undisposed of share of the community property, for no other reason than the fact that by the will he had disposed of some parts of the community property and had willed his wife the usufruct of his entire property.

It is asked: Why did he make a will if he intended his wife to have his community share? The answer is obvious. He desired to dispose of a part of the property to his two friends, and, if he did so, it was necessary to give the usufruct of that property to his wife by his will; otherwise the bequest would have passed free of the usufruct. And, again, he wished to bestow on his wife the fruits and enjoyment of all of his property during the balance of her life, and this he could do only by will in so far as his separate property was concerned. The fact that his brothers and sister were not mentioned in the will, coupled with the fact that he deprived them of the fruits and enjoyment of that part of his estate which went to them by the effect of law, we think is sufficient answer to the contention that the testator intended to deprive his widow of her inheritance and to give it to the plaintiffs and their sister.

It is just as plausible to argue that by giving the usufruct of the separate property to the wife the testator thereby intended to divest his collateral relations of the ownership, as it is to say that he intended to give them the naked ownership of the undisposed of share of the community property by will-

ing his wife the usufruct of the property she would inherit were it not disposed of.

Suppose, for instance, the testator, instead of giving to Mrs. Pujol the usufruct of his entire property, had merely conferred on her the usufruct of his separate property and of that part of his share of the community property which he disposed of in the will,—could it be contended that the widow would not have inherited the balance of her husband's share of the community property? Certainly not. There is no greater reason for saying that she was deprived of her inheritance by reason of the fact that the testamentary usufruct included property, the ownership of which was vested in her by law. The granting of the usufruct on the undisposed of portion of the testator's half of the community property, did not add to, nor could it detract from, the widow's rights under the law.

In Succession of Moore, 40 La. Ann. 531, 4 South. 460, the husband by last will gave his wife the usufruct of all of his property, separate and community. Later by codicil he gave to his wife the disposable portion of all of his property. The contention made was that the widow could not claim both the disposable portion and the usufruct. The court in disposing of the contention said:

"It is apparent, that the only condition imposed by law for the existence of the usufruct in favor of the survivor, is that the deceased shall not have disposed by will, adversely, of his·share in the community.

"As a consequence, it follows that where the adverse disposition affects only part of the share, the usufruct shall not extend over the disposed portion, but shall exist over the undisposed portion, inherited by the issue of the marriage.

"Disposing of the share means disposing of the entire share.

"To dispose of part of the share is not, to dispose of the entire share, is not to dispose of the share."

[2] Mr. Pujol did not dispose of his entire share in the community property. He disposed of only a part of his share. Hence, under the expressed terms of article 915 of

the Civil Code, the undisposed of share descended in absolute ownership to his surviving widow. This, as counsel for plaintiffs correctly say, is the fiat of the law, and the court is powerless to evade it under the pretense of seeking an intention of the testator not justified by the plain language of the will.

Judgment affirmed at appellants' cost.