FOURNET, Chief Justice.
The plaintiffs, collateral heirs of Mrs. Pauline Fontenot Vidrine, are .appealing from a judgment dismissing, on exceptions of no cause and no right of action, their suit attacking the judgment placing the collateral heirs of Jean Baptiste Vidrine, decedent’s spouse who followed her in death, in possession of the entire community estate that had belonged to the Vidrines, as well as dismissing their attack upon the accounting and proposed distribution among these collateral heirs of the funds derived from the sale of this property, auctioned under court order to facilitate partition by licitation.
There is apparently no dispute as to the facts of the case and the well pleaded ones must, of necessity, be considered as true for the purpose of disposing of these exceptions. These disclose that Pauline Fontenot and Jean Baptiste Vidrine were married on February 23, 1886, when they were approximately 19 years old. They left neither ascendants nor descendants. On October 24, 1908, when they were about 40 years of age, they executed in French and under the supervision of a qualified notary what might be termed “reciprocal wills,” each bequeathing to the other, according to the literal translation of the pertinent portion of the will as set out in brief and which is not contested, “ * * * in usufruct, without bond and for the duration of his (or her) natural life, the entire balance of my community estate which will remain after deducting my legal debts.”
*984 After Mrs. Vidrine’s death- on May 17, 1937, the surviving husband probated her will and, being confirmed as the testamentary executor thereof, caused the estate to be inventoried. But he took no further steps toward its ultimate settlement. Upon his death in October of 1948, his collateral heirs secured an order placing them in possession of the entire community estate and, on February 5, 1949, following, caused all of this estate to be sold at public auction for the purpose of effecting among themselves a partition thereof by licitation. On February 25, 1949, the collateral heirs of Mrs. Vidrine (her brother, sister, and the heirs of two predeceased sisters) filed suit attacking this judgment, and, three days later, filed an opposition to the proposed accounting and distribution of the funds derived from the sale of the community property, the funds, by agreement, being placed in the registry of the court pending the final determination of the rights of the respective sets of heirs thereto. The two actions were consolidated for trial and this appeal was taken from the judgment dismissing both on exceptions of no cause and no right of action.
The exact contentions made by the plaintiffs in their petition are somewhat obscure (because of the involved manner in which they are stated), and the arguments advanced in brief appear -to be numerous (because some points have been restated in a number of ways), but we find that when carefully analyzed they are as follows: (1) The court must give effect to the intention of the testator without departing from the proper signification of the terms used, and the clear and unambiguous provisions of Mrs. Vidrine’s will, when considered as written together with the context of the law then in effect, will disclose it was her intention to vest only the usufruct of her share of the community estate in her husband, thus, by necessary implication, leaving to her collateral heirs the naked title; (2) Vidrine so understood it and by probating her will not only judicially confessed he was not entitled to the property but estopped his heirs from seeking to be declared the owners thereof; in any event, whatever right he may have had to pursue his claims of ownership, being personal, expired with his death; (3) the disposition of the estate cannot be governed by the provisions of Article 915 of the Revised Civil Code (coming into operation only when the decedent dies intestate) inasmuch as Mrs. Vidrine left a “disposing will” wherein she vested, by implication, the naked title to her half of the community in her collateral heirs; and (4) inasmuch as the intention of the testatrix is governed by the law at the time the will is made and the effect by the law at the time of her death (the law being different on these two occasions because of amendment), the will is ambiguous and extraneous evidence may be introduced to show her appreciation of the significance of her disposition under this will, and, thus, her real intention.
*986 Article 915 of the Revised Civil Code at the time the will in question was executed in 1908 read as follows: “In all cases, when either husband or wife shall die, leaving no ascendants or descendants, and without having disposed by last will and testament, of his or her share in the community property, such share shall be held by the survivor in usufruct during his or her natural life.”
Two years later, in 1910, this article was amended to provide that “such undisposed •of share shall be inherited by the survivor in full ownership”; and although it was subsequently amended in other respects, this portion remained unchanged at the time of Mrs. Vidrine’s death in 1936.
Under the express provisions of the Revised Civil Code definite rules are laid down for our guidance in the interpretation of legacies, and we find, in Section 7 of Chapter 6 of Title II of Book III (which book deals with the different modes of acquiring the ownership of things), that ■“the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament”, Article 1712, and that extrinsic evidence may only be admitted for the purpose of determining intention “When, from the terms made use of by the testator, his intention can not be ascertained * * *.” Article 1715. And, under the jurisprudence of this court, it cannot be implied a testator intended to bequeath property where there is no devising language contained in the testament. Succession of Pujol, 156 La. 448, 100 So. 677; Succession of Ferrara, 189 La. 590, 180 So. 418.
Mrs. Vidrine, by her will, in clear and unmistakable language bequeathed the usufruct of her estate to her surviving husband and made no disposition of, nor even reference to, the naked ownership. It necessarily follows that inasmuch as the effect of this will is governed by the law as it existed at the time of her death, her surviving husband, under the plain provisions of Article 915 as amended, inherited, in full ownership, her share of the community estate. See, Succession of Ferguson, 146 La. 1010, 84 So. 338, and Succession of Pujol and Succession of Ferrara, both supra.
 Nothing in the proceedings under which Vidrine probated his wife’s will and had himself confirmed as the testamentary executor can form the basis for a conclusion that by such action he intended to waive or renounce any right he may have had to the naked title to this property or that he intended thereby to estop his heirs from having themselves placed in possession thereof after his death. Consequently, there can be no estoppel by judicial confession or “in pais.” The fact that he did not cause himself to be placed in possession of his wife’s interest in the community before his death cannot have the effect of vesting in the collateral heirs of his wife greater rights than they would have had *988 under the will itself, nor can it give the collateral heirs of his wife any comfort, for his heirs succeeded to this right and, under operation of law, it does not prescribe until after 30 years. Articles 949, 1030, and 3548 of the Revised Civil Code. See, also, Succession of Tyson, 186 La. 516, 172 So. 772.
A study and analysis of all of the authorities cited by counsel for appellants disclose they not only do not support their contentions, but are in full accord with the views hereinabove expressed. It would, therefore, serve no useful purpose to discuss them.
For the reasons assigned, the judgment appealed from is affirmed.