(98 South. 666)

No. 25150.

## SUCCESSION OF CARBAJAL.

(Oct. 29, 1923. On Application for Rehearing, Jan. 7, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Statutes** ⬾183—**When literal effect need not be given words of statute, stated.**

The courts are not compelled to give literal effect to words of a law when the result would be to deny a particular class a fundamental right enjoyed by all other citizens, when the reason or underlying cause for the distinction has ceased to exist.

2. **Wills** ⬾191—**Will not avoided by birth of legitimate child after testator's death when provisions for such child have been made.**

Rev. Civ. Code, art. 1705, providing that a testament falls by the birth of legitimate child, has no application to a will making full provision for a child of testator born after his death, in view of articles 1482, 29, 252.

On Application for Rehearing.

3. **Husband and wife** ⬾275—**Effect of widow's remarriage stated.**

Where a will is valid, the usufruct of the whole estate given by the will to the widow continues, despite the widow's second marriage, and only the legal usufruct ceases upon such second marriage.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Action by F. Wilfred Gaudin, undercurator of Oscar Carbajal, against Mrs. Rosa L. Martin and another to annul the will of Nicholas G. Carbajal, deceased. Judgment for defendants, and plaintiff appeals. Affirmed.

Edward Rightor, of New Orleans, for appellant F. Wilfred Gaudin.

Paul W. Maloney, of New Orleans, for Mrs. T. Carbajal Konzeleman.

Bernard Titche, of New Orleans, for appellee Mrs. Rosa L. Martin.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

DAWKINS, J. This is an action to annul the will of the deceased, Nicholas G. Carbajal, brought by the undercurator of an interdicted son, Oscar Carbajal, against his mother and colegatee under said will; the said mother being the curator, and the petitioner having been ordered to bring the suit by one of the judges of the court below.

The trial court sustained an exception of no cause of action, and plaintiff appealed.

### Opinion.

The plaintiff (the interdict) is alleged to be one of six children living at the death of the testator, which occurred on August 21, 1901. It is further alleged that the will was made two days before, August 19th, and that on October 11th following a seventh child, Dolores, was born, which had the effect of annulling the said will by the express terms of article 1705 of the Revised Civil Code, which reads:

"The testament falls by the birth of legitimate children."

In the alternative, petitioner averred that if the will was not held void, the defendant had forfeited the ownership of the movables given her by the deceased as well as the usufruct of his half of community immovables.

Defendant pleaded vagueness, prematurity as to the alternative demand, nonjoinder of parties defendant, and finally that the petition disclosed "no valid or legal cause or right of action."

Inasmuch as the exception of no cause of action, if sustained, will, as stated by the lower court, dispose of the case, we shall take it up first and forego consideration of the other pleas.

### Exception of No Cause or Right of Action.

It is the contention of plaintiff that we should construe and apply literally the language of article 1705 of the Code; that is, that the will of a married man or woman falls by the subsequent birth of a child, regardless of any provision made in its favor.

This is the first time, so far as the exhaustive search of the attorneys for the respective parties and our own investigation has developed, that this court has been presented with this particular question; i. e., as to the effect of the subsequent birth of a legitimate child upon a will, where full provision is expressly made for it therein. It is res nova in our jurisprudence.

We are fortunate, however, in having the advantage of most exhaustive and able briefs from both sides, citing and reviewing the laws, jurisprudence, and commentators of other jurisdictions, including those of Spain, France, and other continental countries, as well as of England, and our sister states. It has been found that in practically all of these some similar provision exists, carrying this wholesome principle to protect and prevent discrimination against the unborn. The language varies, but the general import and purpose is the same. It is also true, practically without exception, that the basic reason for the law as recognized in those forums is that it shall not be assumed a testator intended to exclude his unborn offspring from participation in his estate because of a will made before its birth. Thus, the sovereign, recognizing the frailties of the human mind and the uncertainty of life, seeks to compensate therefor by creating, in such circumstances, the same condition of equality which would otherwise exist if no testament had been made.

[1] Statutes, like principles of jurisprudence, have for their foundation causes or reasons affecting human activities or welfare, which find concrete expression in the particular language used by the legislating authority. Familiar rules of interpretation require as a primary duty that courts ascertain and expound those purposes commonly called the legislative intent. Yet we are not compelled to give literal effect to words of a law, when the result would be to deny a particular class a fundamental right enjoyed by all other citizens, when the reason or underlying cause for the distinction has ceased to exist.

Under our law, as well as in most other civilized countries, a person may, subject to certain well-known limitations, dispose by last will of his property as he sees fit. But if the contention of the appellant in this case be correct, then every married man and woman in this state, from the moment of conception and during the pregnancy of the wife, is totally incapacitated to make a will, provided the child be born alive, no matter what provision be made for it, or how just or laudable may be the dispositions which they may wish to make of their property. We do not believe that the lawmaker ever contemplated or intended any such harsh result in attempting to accomplish the wholesome purpose for which article 1705 of the Code was enacted.

It would not in our opinion aid materially in deciding this case to analyze and compare at length the able arguments of counsel on either side as to whether this article was or was not taken from the Partidas; though we are convinced the principle had its origin in the civil law, whether it came direct to us from Spanish sources or otherwise. Its counterpart in the English common law also came from the same source. 4 Kent, p. 523. It is a well-known fact in our state's history that the Code of 1825 (in which this article 1705 first appeared, then numbered 1698) was prepared by those distinguished civilians, Derbigny, Livingston, and Moreau-Lislet, and it would seem natural that their great knowledge of and familiarity with the principles of the civil law should have had their influence in choosing the language of the Code; and that when so chosen, it would be done in the light of its meaning under that system. Aside from these considerations, we are bound to assume, even granting such influences were not present, that those who conceived this particular provision were at least familiar with the interpretation which it had received in jurisprudence throughout most of the civilized world. What justification would there be for saying that some particular legislator conceived the idea, uninfluenced by any of the considerations mentioned, when the corresponding provisions of the Partidas was already, at that time, a part of the law of this state, whether it was included in the compilations by Moreau-Lislet and Henry Carleton, or in the projet of 1823, or not? These gentlemen were not authorized to enact any law, but merely to compile or codify that which already existed.

Again, as said by the lower judge, the construction contended for by appellant "would make it possible for courts to negative many articles with other articles," and would ignore the rule of article 17 that laws in pari materia should be construed with reference to each other. Article 1482 declares that—

"In order to be capable of receiving by donation inter vivos, it suffices to be conceived at the time of the donation.

"In order to be capable of receiving by last will, it suffices to be conceived at the time of the decease."

Article 29:

"Children in the mother's womb are considered, in whatever relates to themselves, as if they were already born; thus the inheritances which devolve to them before their birth, and which may belong to them, are kept for them,

and curators are assigned to take care of their estates for their benefit."

Article 252 provides further for the protection of the interests of the child born after the death of its father, by requiring the appointment where necessary of a curator before birth and a tutor afterwards "for the administration of the estate which may belong to such child." To apply article 1705 literally would exclude any property or rights which the father might attempt to give it by will, even though he might wish it to have, as against its brothers and sisters, all of the disposable portion. It is true that some measure of operation could still be given to the above-quoted provisions, though article 1705 were held to invalidate a will under all circumstances when a child was subsequently born. As pointed out by counsel for appellant, they could be said to refer to every donation or inheritance coming from all relations other than the mother or father, even from strangers. But this would exclude the possibility of donations from the most fruitful source from which they arise in favor of descendants. Why should there exist in the law such a handicap for those who are bound presumably by the strongest ties of nature to provide for their own flesh and blood?

In the present case, the testator knew of the pregnancy of his wife, and after donating to her his movable property, together with the usufruct of immovables, declared that his unborn child should share equally with the others in the remainder of his estate, the most natural and reasonable thing that could have been done. The attack made here is not by that child, but by the undercurator of one interdicted which was some years old when the will was made.

[2] In such circumstances, we see no reason for taking a view different from that almost universally adopted in other jurisdictions, and that is that since proper provision was made for the unborn child, then known to have been conceived, the condition contemplated by the article of the Code for producing the nullity of the will had failed, and its provisions were therefore inapplicable. Partidas, Law 20, tit. 1, book 6; Justinian's Inst. Let. 2 tit. 13; Domat Oeuvres, Des Testamens, tit. 1, § 5, Nos. 6, 7, and 8 (Ed. 1835) pp. 539, 540; I. b. tit. 2, vol. 2, pp. 624, 625; Merlin, Questions De Droit, vol. 6, pp. 374, 379, 381; Merlin, Repertoire De Jurisprudence, Preterition, p. 38, Common law; Gardner on Wills (1903 Ed.) p. 283; Alexander on Wills, vol. 2, p. 951, § 632; 40 Cyc. 1198, 1199.

"The true intention of the Legislature, when ascertained, must always prevail over the literal sense of the terms employed. To know the law is not to grasp its words, but its force and power." State v. Poydras' Heirs, 9 La. Ann. 165.

"The letter of law may be disregarded with the honest intention of seeking its spirit when it leads to an absurd conclusion, and the judge is bound to recede from the letter until he arrives at a reasonable conclusion." Ardry v. Ardry, Kain & Co., Intervener, 16 La. 264. See, also, Hen. Dig. vol. 1, p. 784; Cox v. Williams, 5 Mart. (N. S.) 139; Bank v. Foster, 5 La. Ann. 516; State v. Wiltz, 11 La. Ann. 439; Church of the Holy Trinity v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; U. S. v. Kirby, 7 Wall. 482, 19 L. Ed. 278.

While, as stated above, we have not heretofore had occasion to pass upon the identical question, presented in this case, we have had to consider article 1705 and to comment upon its meaning and purpose. In Succession of Senac, 2 Rob. 258, this court, speaking through Justice Morphy said:

"This provision of our Code is founded on the presumption that he [the father] would not have made such a will, had he foreseen that he would thereafter have children. If, * * * the testator did not revoke this will

during the sixteen months that he survived the birth of his child, it is fair to presume that it was because he knew that by the law of Louisiana, under which it was made, it had become a nullity on the birth of such child."

Again, through Chief Justice Slidell, in Lewis v. Hure, 8 La. Ann. 378, we said:

"The reason of this provision is not given by the lawgivers, but is obvious. It is founded upon the reasonable presumption that the testator would not have given his property to others had he foreseen that he would afterwards have offspring. * * * There is no reason to suppose that a testator would have been insensible to the welfare of a posthumous child, if the contingency of its birth had suggested itself to his mind, any more than to suppose such insensibility in the case of a child born before his death. In both cases, it is reasonable to presume the testator would have felt the promptings of parental love, and the obligations of parental duty, if the event had been foreseen."

And in Succession of Parham, 11 La. Ann. 646, wherein the will was held to have fallen by the subsequent birth of a child, the court, through Justice Spofford, significantly remarked:

"We see nothing in the record to take this case out of the rule."

For the reasons assigned, the judgment appealed from is affirmed, with costs.

On Application for Rehearing.

By the WHOLE COURT.

PER CURIAM. Appellant complains that his alternative demand was not passed upon. This is correct; it was not passed upon because not mentioned in brief or argument. But even as to this, we think the petition shows no cause of action.

1. C. C. art. 1753, was repealed by Act 238 of 1918; but there is a saving clause to that act (wholly unnecessary), by which it was not to affect property which had reverted to the children prior to its passage. As the defendant (widow) had remarried before the passage of that act, the personal property given her by will had already reverted to the children of the first marriage.

However, the right to the usufruct thereof remained, under the very terms of the Code (apart from the will). She therefore had the right to retain possession thereof during her life; and any judgment herein rendered would be merely declarative of a fact. But courts do not sit to decide abstract questions or render judgments which cannot be executed.

[3] 2. The will being valid, the usufruct of the whole estate, given by will, continues despite the second marriage; only the legal usufruct ceases upon second marriage. Smith v. Nelson, 121 La. 170, 46 South. 200.

A rehearing is therefore refused.