LUTHER E. HALL, Judge pro tem.
The decedent, Mrs. Josephine Calcagnio (or Calcagno) wife of Milchiori Quarta-raro, died in the city of New Orleans where she had her residence and domicile, on February 25, 1958, leaving a last will and testament in nuncupative form by public act dated February 9, 1952, which reads in part as follows:
“At my death I leave, give and bequeath to my beloved husband, Mil-chiori Quartararo, all the property, of whatsoever nature and kind, I may possess at the time of my death, in full ownership. If my said devoted husband should predecease me, then, in that event, I leave, give and bequeath all the property of whatsoever nature and kind, I may possess at the time of my death, to my loving niece, Mary Calcagnio, wife of Eddie Steffen, from whom she is presently separated, and she resides at my said home in this city of New Orleans, La., in full ownership. I name and appoint my said dear husband as the Executor of my succession * *
In due course Mrs. Quartararo’s succession was opened in the Civil District Court for the Parish of Orleans on the petition, of her said surviving husband, Milchiori Quartararo, who obtained an order from! the District Judge dated January 29, I960,, ordering the registry and execution of the will and confirming him as Testamentary-Executor.
Thereafter, on June 23, 1960, Mrs. Mary-Calcagnio, divorced wife of Eddie Steffen- and then and now wife of Luden J. Fiorel-lo, brought a proceeding against Milchiori Quartararo, the testamentary executor, in-which she alleged that she is the sole heir of decedent by virtue of having been-adopted by the decedent as her daughter by-notarial act dated April 17, 1954; that she was adopted subsequent to the making of decedent’s last will and testament; that no provision was made for her therein; and prayed that said last will and testament be-declared null and void in conformity with-Article 1705 of the Revised Civil Code, as amended, which provides that a testament, is revoked by the subsequent adoption of a. child by the testator. She further prayed, that the order of January 29, 1960, ordering the registration and execution of the will and confirming Milchiori Quartararo as. testamentary executor be recalled and. voided.
The District Judge, after a hearing, declared the nullity of the will and recalled’ and voided his order of January 29, 1960. Milchiori Quartararo prosecutes this, devol-utive appeal from that judgment.
*279 The appellee, Mrs. Mar.y Calcagnio Fiorello, was a major, 24 years of age at the time of her adoption by the testatrix, and appellant’s principal contention is that the Article 1705, as amended, has reference only to children under the age of 17 who may be adopted and does not contemplate that the adoption by a testator of a person of the full age of majority would cause the revocation or annulment of a testament previously made. Appellant also contends that appellee was specifically provided for in decedent’s-will thus bringing the matter within the doctrine enunciated by the Supreme Court in Succession of Carbajal, 154 La. 1060; 98 So. 666, 30 A.L.R. 1231.
The first point which we have to consider is the proper interpretation of the word “child” as used in Civil Code Article 1705 as amended by Act 334 of 1948 (LSA-C.C. 1705). This Article reads as follows:
“Art. 1705. A testament is revoked by the posterior birth of a legitimate child to the testator or by the subsequent adoption of a child by the testator.”
Appellant contends that the word “child” in the phrase “adoption of a child” should be given its most common and ordinary meaning as signifying an infant, a minor, or an immature person and cites several dictionary definitions to that effect. Appellant attempts to buttress his argument with an historical review of the legislative acts relative to adoption, by which he shows that the legislature has always made a distinction in the methods of adoption between children under 17 years of age and persons .above the age of 17, and concludes from this that the legislature having this distinction in mind used the words “adoption of a .child" in Art. 1705 as meaning adoption of a child under the age of 17 years, otherwise it would have used the phrase “adoption of .a person”.
While it is true that the word “child” -is often used to denote minority, it is also often used to mean descendant. In the former case it serves to identify a person as one of tender age, in the latter to show the status of a person.
Our Civil Code frequently uses the term to denote status.
For instance LSA-C.C. art. 3556(8) defines “children” as follows:
“Children. — Under this name are comprehended, not only the children of the first degree, but the grandchildren, and all other descendants in the direct line.”
Surely the term could not be used to denote the first generation under the definitions suggested by appellant if there happened to be subsequent generations. A person is still the child of his father no matter if he lives to be a hundred years old.
Again in LSA-C.C. art. 1493 we find the following language:
“Under the name children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.”
It is obvious that the legislature referred here to status and not to identity as minors. And the same is true of practically all, if not all, of the Articles of the Civil Code which use the word “child” in dealing with succession matters. Article 895 (LSA-C. C. art. 895) is an illustration. It reads :
“ * * * (Representation) is admitted in all cases, whether the children of the deceased concur with the descendants of the predeceased child, or whether all the children having died before him, the descendants of the children be in equal or unequal degrees of relationship to the deceased.”
As said in Succession of Thomson, 221 La. 791, 60 So.2d 411 which involved a person who was a major at the time of adoption :
*280 “It is apparent that the lawmakers have recognized that adoption creates the status similar to that of a child or forced heir. This being true, the laws relating to descendants and forced heirs are pertinent * * * ” (Emphasis' added).
And the creation of a status is what was intended by the act of adoption in this case which reads in part:
“They, and each of them, do by these presents, adopt as their own child * * * to all intents and purposes as if she * * * was and had been lawfully born to them, during their lawful marriage to each other * * * ” (Emphasis added).
If the Court followed the contentions of appellant and held that the word “child” in Article 1705 means “minor child” or “a person under the age of 17” it would in effect be ruling that there are two classes of adoption rights in Louisiana — one applying to persons under 17 and one applying to persons over 17.
There are obvious reasons why the legislature would require procedure for the adoption of an infant or a person of tender years different from that required for the adoption of an adult as it has done in the adoption statutes. (LSA-R.S. 9:421 — 9:441 and LSA-R.S. 9:461, 9:462) But we can see no ground in reason or logic for the legislature to differentiate between the inheritance rights of adopted persons on the basis of age and we cannot presume that it intended to grant to persons adopted under one statute greater rights than to persons adopted under the other statute.
It is clear to us that the word “child” in the Article 1705 was used to signify a status and not to indicate minority. It is our opinion that a testament is revoked under that Article by the subsequent adoption of any one by the testator, regardless of the adoptee’s age when adopted.
 Appellant contends in the alternative that appellee was specifically named and described in the testament and that she was specifically provided for therein thus bringing the matter within the doctrine of the Succession of Carbajal supra which held that Article 1705 has no application to a will making full provision for a child of the testator born after his death.
In this case the Court said:
“In the present case, the testator knew of the pregnancy of his wife, and after donating to her his movable property, together with the usufruct of im-movables, declared that his unborn child should share equally with the others in the remainder of his estate, the most natural and reasonable thing that could have been done. * * *
“In such circumstances, we see no-reason for taking a view different from that almost universally adopted in other jurisdictions, and that is that since proper provision was made for the unborn child, then known to have been conceived, the condition contemplated by the article of the Code for producing the nullity of the will had failed, and its provisions were therefore inapplicable.”
As we see it, in order to come within the exception to Article 1705 as stated in the Carbajal case, two things must be present: first, there must be knowledge on the part of the testator of the existence or possible existence of a child, and second, the testator must fully provide in his will for that child, as a child and heir.
In the present case, neither of these conditions are present. In order to hold this testament valid under the Carbajal case the Court would have to find (a) that decedent knew when she executed this testament that she was going to adopt the appellee, and' (b) that the testament fully provided for the appellee as a child. There is nothing to show that the deceased ever contemplated adopting appellee until she actually did so some two years after the confection of the will, and in the will she was specifically called and identified as a “niece”. To say *281 that decedent fully provided for her as a. daughter in her will is completely at variance with the clear wording of the will itself.
The Carbajal case in our opinion has no application to the circumstances of this case.
For the foregoing reasons the judgment of the District Court is affirmed.
Affirmed.