242 So.2d 340 (1970)
SUCCESSION OF B. J. CHAUVIN, Sr.
No. 4174.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1970.
Rehearings Denied January 11, 1971.
Writ Granted February 24, 1971.
Writ Refused February 24, 1971.
*341 Morris B. Phillips, New Orleans, for plaintiff-appellee.
Gauche, Wegener & Oster, Robert J. Oster, New Orleans, for Southern Savings Ass'n, defendant-appellant.
Jackson P. McNeely, New Orleans, for B. J. Chauvin, Jr., defendant-appellant.
Before SAMUEL, GULOTTA and BARNETTE, JJ.
Writ Granted in No. 51,140 February 24, 1971.
Writ Refused in Nos. 51,139, 51,180 February 24, 1971.
SAMUEL, Judge.
The decedent herein had been married but once and was survived by his widow and a son, the only child born of his marriage. He died testate leaving an estate consisting entirely of property acquired during the community. In due course his widow was sent into possession of the usufruct of her husband's estate, and the son was recognized as naked owner thereof, in a judgment of possession. This distribution was directed by the following pertinent portion of decedent's last will and testament:
"I leave all I die possessed of to my son Bernard Chauvin Jr., subject to the usufruct thereon which I leave to my loving wife, Bernice."
Among the assets in the estate was Optional Savings Account No. 34341 of the Third District Homestead Association in New Orleans containing $10,399.59. When the widow requested delivery of these proceeds the homestead released $5,199.80, representing her one-half community interest, but refused to deliver the half over which she had the usufruct without the naked owner also receipting therefor. She then filed a rule directing the homestead and her son to show cause why the funds should not be released on her signature alone. After a hearing the rule was made absolute and from that judgment both the homestead and her son appealed suspensively.
While that appeal was pending the son, B. J. Chauvin, Jr., filed a rule directing his mother to show cause why the usufruct should not be declared terminated as of June 12, 1969, on which date she had entered into a second marriage with Irvin Aronson, and why she should not render an accounting. The mother pleaded the exception of no cause of action and, from a judgment maintaining the exception, the son appealed suspensively.
Thus the present appeals involve reviews of two judgments which raise these issues: (1) Does a subsequent marriage by the surviving spouse terminate the usufruct over her deceased husband's community estate when the usufruct is conferred by will?; and (2) If the usufruct has not been ended by the second marriage, is the usufructuary entitled to the corpus of a homestead optional share savings account over which she has the usufruct or must she leave the account intact and simply draw the interest?
*342 On the first issue, appellant contends the testament simply confirmed the usufruct given the surviving spouse by LSA-C.C. Art. 916 which, under the provisions of that article, terminates upon entry into a second marriage. The article reads:
"In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold a [in] usufruct, during his or her natural life so much of the share of the deceased in such community property as may be inherited by such issue. The usufruct shall cease, however, whenever the survivor shall enter into a second marriage." LSA-C.C. Art. 916.
As authority for this proposition he cites language from Succession of Moore, 40 La.Ann. 531, 4 So. 460, to the effect that a testamentary bequest of the Article 916 usufruct is simply a confirmation of the rights of the surviving spouse in an intestate succession and its inclusion in the will does not convert it into a testamentary usufruct. Thus this appellant urges us to conclude the bequest of the legal usufruct by will does not exempt it from the conditions outlined in Article 916 and, under that article, ceases when the usufructuary contracts a second marriage. Conversely, the usufructuary argues that a usufruct over community property bequeathed by will is a testamentary usufruct which continues for life and is not affected by a second marriage. In support of this position she cites Smith v. Nelson, 121 La. 170, 46 So. 200, and Succession of Carbajal, 154 La. 1060, 98 So. 666. In both Smith and Carbajal the Supreme Court permitted the surviving spouse to retain the bequeathed usufruct after the subsequent marriage.
In Smith the pertinent wording of the testament was similar to the instant case. There the testatrix's second husband was sent into possession of the usufruct of all her property acquired during the second community while three children, issue of a prior marriage, inherited in full ownership all the assets of the first community and the naked ownership of the second. When the usufructuary remarried, the naked owners sought to have the usufruct declared terminated. The court held the usufruct conferred by testament does not end on the usufructuary's subsequent marriage. In Carbajal the court permitted a mother to retain the usufruct over her deceased husband's community estate after her subsequent marriage.
Thus our jurisprudence holds that a donation mortis causa of the usufruct of community property to the surviving spouse confers a lifetime usufruct which is not terminated by a subsequent marriage. This is true even if the testament grants the same usufruct the survivor would have acquired by operation of law under LSA-C.C. Art. 916 in an intestate succession.
The authorities cited by appellant raise a second issue regarding the effect of the widow's second marriage on her testamentary usufruct. In Moore the court reasoned:
"* * * It is true that Moore could not incumber the portion for which his children are forced heirs, that is their legitime; but the fact is that he has not done so, for the incumbrance is placed upon it by law, independent of his participation. * * *"
The forced portion of a testator's estate is set forth in LSA-C.C. Art. 1493. In pertinent part this provides:
"Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; * * *." LSA-C.C. Art. 1493.
In the instant case the son inherited the naked ownership of his father's estate and his legitime has been burdened with a usufruct in favor of his mother. It is true that Article 916 confers on the *343 surviving spouse in community the usufruct of the decedent's interest in the community, leaving issue of the marriage with the naked ownership. But, construing both codal articles in pari materiae, we conclude Article 916 is a statutory exception to the general rule enunciated in Article 1493, an exception which a testator cannot exceed and which restricts him to all of the provisions of Article 916 including, insofar as the legitime is concerned, termination of the usufruct upon a second marriage. While we find the usufruct left by testament in the instant case was not terminated in its entirety by the second marriage of the usufructuary, nonetheless we are of the opinion it cannot burden the one-third legitime due the forced heir. Once the widow remarried she placed this particular legacy beyond the exception Article 916 creates to the requirement that one child must receive one-third of a parent's estate. And in so doing, we conclude she is compelled to forfeit that portion of the usufruct, if any, which infringes on her son's legitime.
It can be argued that Smith and Carbajal reach a result indicating the legitime may have been sacrificed to preserve the survivor's usufruct after remarriage. But this issue was not passed on, considered or discussed in either opinion. Further, the facts given in those opinions do not negate the possibility that the legitime may have been satisfied from a source other than the community property burdened by the disputed usufructs.
Having determined the usufruct of decedent's widow should be reduced to the extent that it infringes on the legitime, if in fact it does infringe, we must still resolve her right to claim the proceeds of that part of the optional share savings account over which her usufruct remains. And this, of course, is dependent upon whether the account is the subject of a perfect or imperfect usufruct.
Civil Code Article 534 defines both as follows:
"Perfect usufruct, which is of things which the usufructuary can enjoy without changing their substance, though their substance may be diminished or deteriorated naturally by time or by the use to which they are applied; as a house, a piece of land, furniture and other movable effects.
And imperfect or quasi usufruct, which is of things which would be useless to the usufructuary, if he did not consume or expend them, or change the substance of them, as money, grain, liquors." LSA-C.C. Art. 534.
Civil Code Article 535 states perfect usufruct does not transfer ownership of the thing to the usufructuary, while C.C. Art. 536 confers the right of ownership in an imperfect usufruct.
Appellant Homestead argues that an Optional Share Savings Account is the subject of a perfect usufruct and cannot be classified as money within the meaning of LSA-C.C. Art. 534. Counsel relies primarily on those provisions of the revised statutes regulating homesteads that treat deposits as payments on shares of stock. The usufructuary conversely asserts optional share savings accounts are judicially classified as money, and thus the subject of an imperfect usufruct.
The jurisprudence supports the usufructuary's position. In Succession of Mulqueeny, 248 La. 659, 181 So.2d 384, the Supreme Court held that optional share accounts were available to satisfy cash legacies, even though the accounts in question had been willed to another legatee. Another case pointing to the conclusion that a homestead savings account, even though it be termed Optional Share Savings Account, is the subject of an imperfect usufruct is Lagle v. Marchand's Estate, La.App., *344 129 So.2d 849. In that case the court stated the usufruct over a savings account is the subject of an imperfect usufruct. We see no distinction between a savings account in a bank or in a homestead from the standpoint of determining the nature of the usufruct thereon. Accordingly, the homestead must release to the usufructuary that portion of the account over which the usufruct remains.
There is nothing in the record to establish whether the usufruct in fact infringes on the legitime or the extent of the infringement if the same does exist. Accordingly, we will remand this matter to permit introduction of evidence on this point by both the naked owner and the usufructuary.
For the reasons assigned, the November 4, 1969 judgment appealed from, i. e., the judgment making absolute the widow's rule against her son and the homestead, is affirmed but only to the extent of requiring the homestead to deliver to the widow either the entire proceeds or part of the proceeds in Optional Savings Account No. 34341 (or Account No. 36584) to the extent and at the time it is ordered to do so by the trial judge.
It is further ordered that the March 4, 1970 judgment appealed from, i. e, the judgment maintaining the widow's exception of no cause of action to the rule filed by the son for the purpose of declaring the usufruct terminated, is annulled and reversed and said exception is now dismissed.
It is further ordered that this matter be remanded to the trial court for further proceedings consistent with the views herein expressed; each litigant to bear his own costs in both courts to this date; all future costs to await a final determination.
Affirmed in part; reversed in part; and remanded.