257 So.2d 422 (1972)
260 La. 828
Succession of B. J. CHAUVIN, Sr.
No. 51140.
Supreme Court of Louisiana.
January 17, 1972.
Rehearings Denied February 21, 1972.
Morris B. Phillips, New Orleans, for relator.
Jackson P. McNeely, New Orleans, for respondent.
Leonard Oppenheim, New Orleans, amicus curiae.
DIXON, Justice.
Writs were granted in this case to consider the effect of the remarriage of the surviving widow upon the usufruct of the surviving spouse.
B. J. Chauvin, Sr., was married once, and was survived by his widow and son. By last will and testament, olographic in form, he had provided: "I leave all I die possessed of to my son Bernard J. Chauvin, Jr., subject to the usufruct thereon which I leave to my loving wife, Bernice." The will did not mention that the usufruct was to be for life. All the property involved in the succession of B. J. Chauvin, Sr., was community property. There was a judgment of possession on April 8, 1969 recognizing the widow's ownership in her one-half of the community, recognizing Bernard J. Chauvin, Jr., as the only child *423 and sole heir and the owner of the other undivided one-half of the community property "subject to the usufruct in favor of his mother, Mrs. Bernice Buwe, widow of B. J. Chauvin, Sr."
On June 12, 1969 Mrs. Bernice Chauvin remarried. Her son subsequently sought to have her usufruct terminated because of the remarriage. Mrs. Chauvin filed an exception of no cause of action to her son's rule; the district court maintained the exception and dismissed the rule.
On appeal, the ruling of the district court was reversed and the case was remanded in part and affirmed in part. The Court of Appeal, relying on Smith v. Nelson, 121 La. 170, 46 So. 200 (1908) and Succession of Carbajal, 154 La. 1060, 98 So. 666 (1924), held that the surviving spouse was allowed to retain the usufruct after her remarriage, saying:
"Thus our jurisprudence holds that a donation mortis causa of the usufruct of community property to the surviving spouse confers a lifetime usufruct which is not terminated by a subsequent marriage. This is true even if the testament grants the same usufruct the survivor would have acquired by operation of law under LSA-C.C. Art. 916 in an intestate succession." (Succession of Chauvin, La. App., 242 So.2d 340, 342).
After reaching the conclusion that testamentary confirmation of a legal usufruct does not terminate on remarriage, the Court of Appeal went on to hold that C.C. art. 916[1] is a statutory exception to the general rule of C.C. art. 1493,[2] which restricts the testator to all the provisions of C.C. art. 916 and requires termination of the usufruct over the legitime when the usufructuary remarries.[3]
Civil Code Article 540 provides the manner in which usufruct may be established:
"Usufruct may be established by all sorts of titles; by a deed of sale, by a marriage contract, by donation, compromise, exchange, last will and even by operation of law.
"Thus the usufruct to which a father is entitled on the estate of his children during the marriage, is a legal usufruct."
Both the relator and respondent before us take the position in their briefs that the usufruct created by Chauvin's will was merely a confirmation of the legal usufruct created by C.C. art. 916. Although there is no statutory basis for the doctrine of confirmation of a legal usufruct, the idea is firmly embedded in our jurisprudence.
For convenience, the usufruct of the surviving spouse provided for in C.C. art. 916 is called the "legal usufruct." (See also C.C. art. 560). Usufructs created by a will are, naturally, called testamentary usufructs.[4]
*424 The relator relies on Winsberg v. Winsberg, 233 La. 67, 96 So.2d 44 (1957),[5] which overruled Forstall v. Forstall, 28 La.Ann. 197 (1876) and reaffirmed Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888). Forstall held that where the decedent bequeathed his share of the community to his widow, C.C. art. 916 did not apply, and the widow was not entitled to the usufruct over the legitime, because the deceased disposed by last will and testament of his share of the community property. In the Succession of Moore, supra, it was held that Article 916 applied to a testamentary disposition of "the disposable portion" of all the property to the surviving spouse, and the wife thus obtained the usufruct over the legitime, in addition to the disposable portion.
In Winsberg, the husband's will left all his property (community) to his wife. The heirs were placed in possession of the legitime and the wife was placed in possession of the balance. There was no mention of usufruct in the judgment of possession. In a suit for an accounting by a grandchild, it was held that the terms of the will indicated an intention of the testator to leave his wife more than the law allowed, and that since there was no testamentary disposition adverse to the usufruct created by law, the widow would receive the disposable portion in addition to the usufruct over the legitime. The Winsberg case squarely decided that the legitime is subject to the usufruct of the surviving spouse when it is a legal usufruct confirmed by a testamentary disposition.
Relator argues that neither the legal usufruct confirmed by testament nor a purely testamentary usufruct terminates on remarriage, relying on Smith v. Nelson, supra, and the Succession of Carbajal, supra. The respondent argues that the confirmation of the legal usufruct by testament subjects the legal usufruct to all the provisions of C.C. art. 916. In the alternative, the respondent argues that if we find the usufruct to be purely testamentary rather than the testamentary confirmation of a legal usufruct, then he is entitled to his legitime in full ownership.
In Smith v. Nelson, supra, the widow of Michael Smith married the defendant Nelson. She died testate in 1897, leaving three children by the first marriage. The will left to her children the property acquired during the first community, and to the surviving spouse, Nelson, the property acquired during the second community, with this further disposition: "Should my children claim the legitime, then I give and bequeath to my said husband the usufruct of all the property, movable and immovable, that was acquired during out marriage."
The Smith children were sent into possession of the first community in full ownership and were sent into possession of the second community, subject to the usufruct in favor of Nelson. In 1906 the heirs and their issue sought a partition, alleging that their stepfather had remarried, and had thus "lost the usufruct by operation of law."
The trial court dismissed the suit and the Supreme Court affirmed, nothing that the trial court had held: "that as the usufruct enjoyed by Nelson was established by the will of his deceased wife, and by the judgment ordering its execution and putting him in possession, it is not affected by his remarriage." The opinion then states: "Adhering to the conclusions stated, we deem it unnecessary to cite additional authority in their support." 121 La. at 173-174, 46 So. at 200-201. The opinion then proceeds to discuss the problems involved in the demands for a partition between the naked owners and the usufructuary.
It is easy to understand how Smith v. Nelson is subject to misinterpretation. It has been cited to support the proposition that the part of C.C. art. 916 providing for the termination of the legal usufruct upon *425 the remarriage of the usufructuary will not be enforced when the legal usufruct is confirmed by testament. Smith v. Nelson cannot stand for such a proposition. C.C. art. 916 is in no way involved, although it was listed in the authorities cited by the trial court. C.C. art. 916 is applicable "when the predeceased husband or wife shall have left issue of the marriage with the survivor. . ." In Smith v. Nelson the predeceased wife left no children who were the issue of the marriage with the survivor. The widow's children were the issue of the marriage with her first husband, who had predeceased her.
The only other Louisiana case located involving the termination of the usufruct upon the remarriage of the surviving spouse is the Succession of Carbajal, supra. For two reasons the Carbajal case is inapplicable. (It was only in a per curiam on the application for rehearing that the Supreme Court considered the contention that the remarriage of the widow terminated the usufruct). First, the court referred to C.C. art. 1753 (repealed in 1918), which dealt with property inherited by the surviving spouse from the decedent, and gave the naked ownership, upon the second marriage of the surviving spouse, to the children of the first marriage, the remarrying spouse retaining only the usufruct of the property.[6] The court noted that the "right to the usufruct thereof remained, under the very terms of the Code . . ."
Second, an examination of the record in the Carbajal case reveals that the testamentary disposition involved was: "I give and bequeath unto my said wife, Rosa Lopez Carbajal, the usufruct of all the remainder of my estate wherever situated, during the term of her natural life. . ." (Emphasis added). Therefore, the Carbajal case involved a testamentary disposition of a usufruct which was clearly intended, by the terms of the testament, to exist for the life of the usufructuary, as well as the usufruct formerly provided for in C.C. art. 1753 before its repeal.
Therefore, the question before us is res nova. A Louisiana case has not been found which had to decide whether a testamentary disposition of the usufruct of the surviving spouse which merely confirmed the legal usufruct granted by C.C. art. 916 terminated upon the remarriage of the surviving spouse.
Louisiana courts have frequently considered the effects of the classification of the usufruct of the surviving spouse as either legal or testamentary. The surviving spouse as a testamentary usufructuary owes taxes. Succession of Baker, 129 La. 74, 55 So. 714 (1911). The Succession of Brown, La.App., 94 So.2d 317 (1957), held that the usufruct of the community home left to the husband in a will was a confirmation of a legal usufruct and therefore not taxable. A testamentary usufructuary must give security, in the absence of a testamentary provision dispensing with the security. Succession of Carlisi, 217 La. 675, 47 So.2d 42 (1950); C.C. art. 558. The legal usufructuary is not required to give bond. C.C. art. 560. One of the principal issues in the Succession of Moore, supra, was whether the legal usufruct, confirmed by testament, would attach to the legitime. The court held that it would, saying at 40 La.Ann. 542, 4 So. at 466:
"Next, Mrs. Moore will be entitled to the usufruct of the remaining share of the deceased in the community during her widowhood, under the law, as confirmed by the will.
"Finally, the portion of the estate of the deceased as shall be thus subjected to the usufruct of Mrs. Moore shall be deemed as the legitime, accruing in naked ownership to the nine children, as forced heirs of the deceased, share alike,. . ."
*426 The only reason suggested for departing from the practice of consistently treating the legal usufruct according to the terms of C.C. art. 916 has been the contention that Smith v. Nelson and Succession of Carbajal stand as authority for the proposition that the legal usufruct confirmed by testament is not terminated by the marriage of the surviving spouse. The two cases do not support this conclusion. On the other hand, the language of the codal article (916) is clear and unequivocal: "This usufruct shall cease, however, whenever the survivor shall enter into a second marriage." And the words "This usufruct" refer to the usufruct over "so much of the share of the deceased in such community property as may be inherited by such issue."
In the case before us, the will bequeathed the naked ownership of all the community property (both the disposable and forced portions) to the issue of the marriage, Bernard J. Chauvin, Jr. This bequest constituted that portion of the community property "as may be inherited by such issue." The second sentence of C.C. art. 916 became applicable. The usufruct ceased when the survivor, Bernice Buwe, remarried. Consequently, the Court of Appeal was in error when it concluded that the usufruct terminated only over the child's forced portion when the wife remarried. Under the will confirmative of the dispositions of the statutory law, the usufruct terminated over all the community property which was bequeathed to the son. Mr. Chauvin, Sr. failed to indicate in his will that he intended to bequeath a life usufruct to his wife. If he had, we would be presented with different questions.
We therefore conclude that the mere confirmation, in a last will and testament, of the legal usufruct conferred by C.C. art. 916 does not free the usufruct from the limitations of that article, and it terminates "whenever the survivor shall enter into a second marriage."
Both parties have applied to this court for writs to review the judgment of the Court of Appeal. The application of Bernard J. Chauvin, Jr., was denied, and that of Mrs. Bernice Buwe, widow of B. J. Chauvin, Sr., was granted.
The trial court sustained an exception of no cause of action and dismissed the rule filed by Bernard J. Chauvin, Jr., to terminate the usufruct. When Bernard J. Chauvin, Jr., appealed from this ruling, the Court of Appeal affirmed in part, reversed in part and remanded. One question decided by the Court of Appeal is not before us: the court affirmed a judgment of the district court holding that a certain homestead savings account was the subject of an imperfect usufruct. The Court of Appeal then held that "a donation mortis causa of the usufruct of community property to the surviving spouse confers a lifetime usufruct which is not terminated by a subsequent marriage," a holding with which we disagree. Further, the Court of Appeal held that the usufruct over the forced portion, inherited by the son, terminated by remarriage, because of the provisions of C.C. art. 916. (We do not reach this problem). The Court of Appeal remanded the case to the district court not for trial on the merits, but to determine whether the usufruct infringed on the legitime, and to what extent it might need be reduced. The demand of Bernard J. Chauvin, Jr., in his rule to terminate the usufruct did not require the introduction of evidence.
We now believe we erred in denying the application of Bernard J. Chauvin, Jr., for writs. His application should have been granted, as well as the other. Nevertheless, the rejection is final, and operates as a final determination of the issues presented in the application of Bernard J. Chauvin, Jr. The part of the judgment of the Court of Appeal unfavorable to him and favorable to the widow of B. J. Chauvin, Sr., will not be disturbed. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151. In spite of the fact that we differ with the Court of Appeal on the applicable law, and would have disposed of the case differently, we must affirm.
*427 For these reasons, the judgment of the Court of Appeal is affirmed, at the cost of the relator.
SUMMERS, J., dissents.
HAMLIN, Justice (concurring in part and dissenting in part):
I respectfully dissent from that part of the majority opinion which, after stating that we erred in denying the application of Bernard J. Chauvin, Jr., for writs and that his application should have been granted as well as the other, holds: "Nevertheless, the rejection is final, and operates as a final determination of the issues presented in the application of Bernard J. Chauvin, Jr. The part of the judgment of the Court of Appeal unfavorable to him and favorable to the widow of B. J. Chauvin, Sr. will not be disturbed. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151. In spite of the fact that we differ with the Court of Appeal on the applicable law, and would have disposed of the case differently, we must affirm."
Art. VII, Sec. 11, La.Const. of 1921, recites that we have the same power and authority when certiorari is granted as we have when the case is carried here by appeal.
Article 2164 of the Code of Civil Procedure provides that the appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. When this case was argued in this Court, thorough arguments as to the law and the provisions of the instant will were presented by counsel for all parties.
If we made a mistake in refusing the application for certiorari of Bernard J. Chauvin, Jr., I believe that this mistake should now be rectified; I believe that Bernard J. Chauvin, Jr., should not be deprived of a property right because of our mistake. It seems to me that the claims of all parties are enmeshed; I believe that we now have the power to pass on the claim of Bernard J. Chauvin, Jr., despite the fact that we denied his application for certiorari. We are here to see that justice is done. I do not find that the case of Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, is apposite herein.
For the above reasons, I respectfully dissent in part. I concur in the remainder of the majority opinion.
TATE, Justice (concurring).
The writer concurs in the majority's scholarly analysis of the prior law on the subject, in its finding that the question before us is actually res nova, and in its decree affirming the court of appeal. The writer, however, disagrees with the majority's conclusion that, where one spouse confers a usufruct by will over that spouse's share of the community property (the naked title to which is in the issue of the marriage), such usufruct is nothing more than a confirmation of the similar legal usufruct provided by Civil Code Article 916. From this, the majority concludes that such usufruct, confirmed or (in my opinion) granted, terminates upon the surviving spouse's re-marriagejust as would the legal usufruct of Article 916, had there been no will.
I agree, instead, with the court of appeal that, upon re-marriage, the usufruct (until then merely confirming the legal usufruct) now is subject to reduction if it infringes upon the forced portion due to the heir.
The majority's conclusion is not unreasonable. It has the merit of logical consistency in holding that such a usufruct, contained in (confirmed by) a will, is for all purposes no more and no less than the legal usufruct provided by Article 916. To grant the survivor a lifetime usufruct, the bequeathing spouse must specify that the usufruct is granted for the duration of the surviving spouse's life. Then, if I read the rationale of the majority right, the usufruct is a testamentary usufruct.
However, this rationale will open up further issues for decision, such as whether in that case the usufruct is for all purposes a *428 testamentary usufruct. If it is, the rationale in my opinion involves unfortunate results, such as (even though the widow never remarries in fact) estate tax consequences (since the widow receives the usufruct by will, not by law) and the necessity for the widow to give security, Civil Code Article 558,[1] since the parent is dispensed with bond only as to the legal usufruct over their children's estate, Article 560. Also, since only the legal usufruct of Article 916 does not impinge on the legitime, presumably such a merely testamentary usufruct is subject to reduction even before the re-marriage of the widow.
I therefore prefer the rationale of the court of appeal that the usufruct given to a surviving spouse by the decedent's will is merely the confirmation of the legal usufruct insofar as it gives her no further rights than that conferred by law (i. e., by Article 916). However, it becomes a testamentary usufruct to the extent and when it confers upon the surviving spouse greater rightspertinently, here, when by virtue of the lifetime nature (i. e., despite re-marriage) of the usufruct granted by the will, such usufruct attempts to grant the widow a usufruct over the child's property which impinges on the legitime, and which is therefore subject to reductionthe legal usufruct does not infringe on the legitime, by operation of law (Article 916), but this usufruct terminates upon re-marriage; a testamentary usufruct may infringe and may therefore be reduced, if the value of the usufruct exceeds the disposable portion. See: Article 1499; Yiannopoulos, Personal Servitudes, Section 16, pp. 55-58 (1968); Yiannopoulos, Testamentary Dispositions in Favor of the Surviving Spouse and the Legitime of Descendants, 28 La.L.Rev. 509 (1968).
Thus, as the court of appeal noted, the usual interpretation of the prior jurisprudence (which the majority here reasonably corrects as based on erroneous dicta) was that "a donation mortis causa of the usufruct of community property to the surviving spouse confers a lifetime usufruct which is not terminated by marriage. . ., even if the testament grants the same usufruct the survivor would have acquired by operation of law under LSA-C.C. Art. 916 in the intestate succession." 242 So.2d 342. The court of appeal further held, correctly in my opinion, that "While we find the usufruct left by testament in the instant case was not terminated in its entirety by the second marriage of the usufructuary, nonetheless we are of the opinion it cannot burden the one-third legitime due the forced heir." 242 So.2d 343.
The court of appeal's interpretationthat the usufruct mentioned by the testament is legal insofar as "confirming" the legal usufruct of Article 916, but testamentary insofar as incumbering the legitime with a burden not there authorized (i. e., insofar as surviving beyond remarriage)is not as intellectually attractive as that adopted by the majority, by which the usufruct is either legal or testamentary but not a blurred composition of both. However, this interpretation is one sanctioned by a logical extension of our prior jurisprudence since Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888), and it is a practical interpretation. It is beneficial, insofar as in accord with the probable intent of the testator to grant a usufruct (at least until re-marriage) without unfortunate tax or reduction-as-in-excess-of-the-legitime problems, whether or not the testament mentions that the usufruct is to be for the survivor's lifetime. And such interpretation is further in accord with the usual interpretation that a usufruct created by will is for the usufructuary lifetime, unless a shorter duration is expressed.[2]
*429 For what help it may be in any reconsideration of this issue, I would like, at the risk of unduly lengthening this concurrence, to incorporate the following analysis of the problems here involved. This analysis is taken almost verbatim from the galley proof of an article by Professor Yiannopoulos to be published in the forthcoming number (2) of Volume Thirty-Two of the Louisiana Law Review, The Work of the Louisiana Appellate Court for the 1970-1971 Term, Property, 32 La.L.Rev. 164 et seq.
The analysis (see paragraphs 1 through 5 below) proceeds as follows:
1. In Louisiana, a usufruct may be either testamentary or legal. It is testamentary when created by mortis causa juridical act; it is legal when created by operation of law. Classification of a usufruct as legal or testamentary carries significant consequences concerning the usufructuary's duty to give security, liability for inheritance taxes, termination of the usufruct upon remarriage, and impingement on the legitime of forced heirs. See Yiannopoulos, Personal Servitudes § 105 (1968). If the usufruct is legal, it terminates upon remarriage, according to Article 916 of the Civil Code; the usufructuary is relieved of the obligation to give security by application of Article 560 of the same Code; the usufructuary is not liable for the payment of inheritance taxes according to fiscal legislation, as interpreted by Louisiana courts: Succession of Marsal, 118 La. 212, 42 So. 778 (1907); and the usufruct does not violate the legitime of forced heirs: Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888). If, on the other hand, the usufruct is testamentary the opposite results follow. Thus, a testamentary usufruct does not terminate upon remarriage: Smith v. Nelson, 121 La. 170, 46 So. 200 (1908). The usufructuary owes taxes: Succession of Eisemann, 170 So.2d 913 (La.App.4th Cir., 1965), writ refused 247 La. 489, 172 So.2d 294. The usufructuary, in the absence of testamentary dispensation, must furnish security: Succession of Carlisi, 217 La. 675, 47 So.2d 42 (1950). And it ought to follow clearly that a testamentary usufruct may impinge on the legitime of forced heirs: La.Civil Code art. 1499; Yiannopoulos, Personal Servitudes § 16 (1968).
2. The distinction between testamentary and legal usufruct has been blurred by the judicial doctrine of "confirmation" of a legal usufruct by will. Article 916 of the Civil Code establishes the legal usufruct in favor of the surviving spouse in community "when the predeceased husband or wife. . . shall not have disposed by last will and testament, of his or her share in the community property." (Emphasis added.) Early Louisiana decisions hold that any disposition by will defeats the legal usufruct under Article 916. Succession of Schiller, 33 La.Ann. 1 (1881); Forstall v. Forstall, 28 La.Ann. 197 (1876); Grayson v. Sanford, 12 La.Ann. 646 (1957). These cases have been long overruled by a long line of decisions establishing the proposition that the legal usufruct under Article 916 may be defeated only by a disposition that is "adverse" to the interest of the surviving spouse. A disposition that is not adverse to the interests of the surviving spouse merely "confirms" the legal usufruct. Succession of Maloney, 127 La. 913, 54 So. 146 (1911); Fricke v. Stafford, 159 So.2d 52 (La.App. 1st Cir. 1963); Yiannopoulos, Personal Servitudes § 103 (1968).
3. The doctrine of confirmation of a legal usufruct by will has no statutory foundation; Article 916 of the Civil Code does not contain the word "adverse" and its obvious interpretation is that any testamentary disposition excludes the legal usufruct. Moreover, the doctrine of confirmation is an anomalous theoretic construction that has complicated unduly the Louisiana law of successions, as it gives rise to the troublesome question whether a legal usufruct confirmed by will is "legal" or "testamentary". It might be indeed simpler to accept the view that any testamentary disposition excludes the legal usufruct under Article 916. Nevertheless, the doctrine of confirmation is deeply imbedded in *430 Louisiana jurisprudence and favors strongly the interests of the surviving spouse. In practical terms, this doctrine allows the surviving spouse to cumulate rights under Article 916 of the Civil Code and under the will of the deceased spouse. See Yiannopoulos, Personal Servitudes § 104 (1968).
4. Assuming that the doctrine of confirmation is here to stay, the basic question is whether a confirmed legal usufruct ought to be classified as "legal" or "testamentary". In this respect there are conflicting determinations. For purposes of taxation, Louisiana courts have reached the conclusion that the mere confirmation of the legal usufruct does not change the nature of the usufruct into a testamentary one. It remains "legal" and inheritance taxes are avoided. See Succession of Baker, 129 La. 74, 55 So. 714 (1911); Succession of Brown, 94 So.2d 317 (La.App.Orl.Cir. 1957); Succession of Lynch, 145 So. 42 (La.App.Orl.Cir. 1932); Yiannopoulos, Personal Servitudes § 17 (1968). Insofar as the usufructuary's obligation to give security is concerned, the usufruct that has been confirmed by will presumably is regarded as "legal", and the survivor is dispensed from the duty to give security. Cf. Winsberg v. Winsberg, 233 La. 67, 96 So.2d 44 (1957); Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888); Yiannopoulos, Personal Servitudes § 61 (1968). In cases involving the question of infringement of the legitime, Louisiana courts have likewise reached the conclusion that the mere confirmation of the legal usufruct does not change its nature. It remains legal; hence, legitime of issue of the marriage is not violated. This was one of the main issues in Succession of Moore, 40 La. Ann. 531, 4 So. 460 (1888). But in cases involving the question whether a confirmed legal usufruct terminates upon the remarriage of the usufructuary, lower courts and commentators have reached the conclusion that the usufruct is "testamentary" in order to exclude its termination upon the remarriage of the usufructuary. As the majority correctly holds, there is no controlling authority for this inconsistency.
5. Consistent and even-handed administration of justice might treat a confirmed usufruct as legal or testamentary for all purposes. The question whether a confirmed usufruct is legal or testamentary might be resolved by application of the following tests: "If the testator intended to give to the survivor the same rights that the law would have accorded him in the absence of a will, the survivor's usufruct is legal . . . If, on the other hand, the intention of the testator was to alter the scheme of intestate succession and to give to the survivor additional rights, the usufruct ought to be classified as testamentary." Yiannopoulos, Personal Servitudes § 105, page 350 (1968).
With regard to the above analysis, the majority has in effect concluded that it will be presumed that a testator intended merely to confirm the legal usufruct, for all purposes, and subject to all the limitations thereof, when such usufruct of the will includes property of the community which is also subject to the legal usufruct provided by Article 916.
As noted, this may not be an unreasonable conclusion. However, I do not think it to be unrealistic to conclude that the ordinary testator with issue of the marriage (and the ordinary notary or practitioner, using language sanctioned by a century of use as having contrary meanings) will necessarily realize (a) that when his will grants (confirms) the usufruct over property to his wife, such usufruct is not for life insofar as (only) community assets are concerned and (b) that when his will does specify that such usufruct is for life,[3] such language may constitute the usufruct a testamentary one *431 (not a legal one), with unforeseen tax consequences and also subject to immediate reduction at the testator's death if it infringes on the legitime, whether or not the widow ever remarries in fact.
For the reasons assigned, I would adhere to what many until now felt was the proper resolution of the conflicting interests of the widow-protection afforded by Article 916 and the demands of forced heirship that the usufruct mentioned in the will may indeed be for life (the ordinary meaning of the language when no other duration is specified), but that it does not infringe on the legitime insofar (but only insofar) as not burdening the legitime in excess of the legal usufruct provided by Article 916. Conversely, to the extent (and only to the extent) that the usufruct mentioned by the will is identical with the legal usufruct of Article 916, the will merely "confirms" the latter; if, however, the legitime is (becomes) burdened by the usufruct to any greater extent than it would be burdened by the legal usufruct, to such greater extent the usufruct is created rather than merely confirmed by the will.
I respectfully concur.
NOTES
[1] In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold a [in] usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage."
[2] "Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.

"Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent."
[3] It was to determine "whether the usufruct in fact infringes on the legitime or the extent of the infringement if the same does exist" that the Court of Appeal remanded the case to the district court. 242 So.2d 340, 344.
[4] For a review of the law respecting testamentary dispositions to the surviving spouse, see Yiannopoulos, Testamentary Dispositions in Favor of the Surviving Spouse and the Legitime of Descendants, 28 La.L.Rev. 509 (1968).
[5] Oppenheim, One Hundred Fifty Years of Succession Law, 33 Tul.L.Rev. 43, 46 (1958); Yiannopoulos, Personal Servitudes, § 104 (1968); Note, 18 La.L.Rev. 574 (1958).
[6] The testator died in 1901; the surviving widow remarried before the passage of Act 238 of 1918, which repealed C.C. art. 1753.
[1] Of course, the testator may specify that the usufruct is without bond, which may save this complication if he so desires.
[2] For instance, had the present usufruct concerned separate as well as community property, the identical language and disposive provision would have conferred a lifetime usufruct over the decedent's separate property, but (under the majority's interpretation) merely a legal (i. e., terminable by re-marriage) usufruct over the community portion of the decedent's estate.
[3] It is now customary for the careful practitioner to specify the usufruct is for the duration of the surviving spouse's life, when the testator desires both to confirm the legal usufruct and also continue the usufruct as long as the beloved spouse lives, even should she assuage the loneliness of her later years by re-marriage.